**Bradley WILSON, Appellant–Defendant,**

v.

**LINCOLN FEDERAL SAVINGS BANK, Appellee–Plaintiff.**

**No. 49A02–0212–CV–1019.**

Court of Appeals of Indiana.

July 1, 2003.

---

Russell L. Jones, Natalie E. Auberry, Cohen Garelick & Glazier, Indianapolis, IN, Attorneys for Appellant.

Theodore J. Nowacki, Paul D. Vink, Bose McKinney & Evans LLP, Indianapolis, IN, Gregory W. Black, The Black Law Office, Plainfield, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant and counter-claimant Bradley Wilson appeals the trial court's grant of summary judgment in favor of appellee-plaintiff and counter-defendant Lincoln Federal Savings Bank (Lincoln), claiming that genuine issues of material fact existed with respect to Lincoln's breach of contract and its negligence regarding a mortgage loan that it made to Wilson. Specifically, Wilson argues that he was excused from performing any obligation under the contract because Lincoln failed to obtain a proper inspection of the septic system on the property as it was required to do, and that Lincoln negligently failed to procure Federal Housing Administration (FHA) insurance on the loan. Concluding that the trial court determined that Wilson had defaulted on the loan, we affirm the grant of summary judgment for Lincoln and remand this cause to the trial court for a calculation of damages.

### FACTS

On September 8, 2000, Wilson submitted an offer to purchase Marian Burnett's Indianapolis residence for $95,000. The purchase agreement acceptance form signed by Burnett provided in part that Wilson agreed to purchase the Real Estate "under the following terms and conditions: House to be sold in 'as is' condition—subject to F.H.A. Home Inspection and financeing [sic]." Appellant's App. p. 32. The purchase agreement was executed on September 11, 2000, and sometime thereafter, a Lincoln representative obtained information necessary for Wilson to complete a "Uniform Residential Loan Application," that he signed on September 21, 2000.

On December 6, 2000, the parties closed the transaction, whereby Lincoln loaned Wilson $94,854 for the purchase of Burnett's property. At the closing, Wilson paid the sum of $2162.26 which included his required FHA insurance premium in the amount of $2087.26 and a "lender's inspec-

tion fee" in the amount of $75. Appellant's App. p. 62, 109. The note was underwritten with the assumption that FHA insurance would become available, inasmuch as no one at Lincoln was aware of any defects on Burnett's property. After the closing, Lincoln learned that to qualify for FHA insurance, the Marion County Health Department (Health Department) was required to conduct a "loan inspection" of the septic system. Thus, Lincoln arranged this inspection for December 20, 2000.

Sometime prior to the inspection and while the FHA insurance issue was still pending, Wilson attempted to make an initial payment on the purported FHA-insured mortgage issued at closing. Wilson contended that Lincoln did not accept Wilson's initial payment because it was concerned there may be a "problem" with the FHA-insured mortgage loan. Appellant's App. p. 110. When the inspection was ultimately performed, the Health Department refused to pass the septic system and Lincoln was, therefore, unable to obtain the FHA insurance for Wilson. The Health Department determined that the septic system was defective and ordered Wilson to install a new one. He was also directed to abandon the well on the property using a state-licensed well driller—all of which was to occur prior to February 10, 2001. Wilson then learned that the Department of Housing and Urban Development (HUD) could not insure the mortgage loan from Lincoln. As a result, Lincoln offered to rewrite the mortgage loan as an uninsured conventional mortgage on no less favorable terms that required Wilson to begin payments in April 2001 rather than February 2001. This conventional loan was offered even though Lincoln would have no insurance protecting it in the event that Wilson defaulted. Wilson ultimately refused the offer of the conventional mortgage, and made no payments.

However, Wilson continued to use the property as his principal dwelling.

As a result of Wilson's nonpayment, Lincoln filed its complaint in foreclosure on April 27, 2001, alleging that Wilson was required, under the terms and conditions of the mortgage loan agreement, to make monthly payments in the amount of $712.61 each, beginning February 1, 2001. Lincoln further asserted that Wilson had failed to make any payments and was, therefore, in default of the loan. Thus, Lincoln maintained that it was entitled to accelerate the loan and foreclose. Lincoln claimed that Wilson owed it $105,897.14 under the loan as of June 1, 2002. Wilson filed an answer and alleged that certain provisions in the contract excused him from all obligations under the agreement. Specifically, Wilson claimed that Lincoln had breached the duty that had required it to obtain a favorable inspection of the septic system on the property. Wilson also brought a counterclaim alleging that Lincoln had promised him an FHA-insured loan but that it had negligently failed to procure FHA insurance on the loan. Thus, Wilson contended that Lincoln was negligent and had breached the contract.

Thereafter, on June 5, 2002, Lincoln filed a motion for summary judgment, contending that it was entitled to judgment as a matter of law in light of Wilson's default. Moreover, Lincoln maintained that Wilson undertook the purchase of the property knowing that he had no right to rely on inspections conducted as part of the FHA insurance process. In opposing the motion, Wilson claimed that genuine issues of material fact existed because Lincoln negligently failed to pay a mortgage insurance premium to HUD, failed to timely obtain appropriate inspections, and by invalidating the FHA mortgage. Wilson also claimed that the conventional mortgage dated February 23, 2001 contained "specif-

ic and significant differences" in the loan documents. Appellant's App. p. 98.

Following a hearing on the motion for summary judgment on October 31, 2002, the trial court determined that Lincoln was entitled to judgment as a matter of law because Wilson "is in default, [the loan] has been accelerated, and is due and owing." Appellant's App. p. 135. Wilson now appeals.

### I. Standard of Review

In reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 223 (Ind.Ct.App.1997). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind.Ct.App.1997), *trans. denied.* Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). On appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App. 1997), *trans. denied.* The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Jordan v. Deery*, 609 N.E.2d 1104, 1107 (Ind.1993).

If we have any doubts concerning the existence of a genuine issue of material fact, we must resolve those doubts in favor of the nonmoving party and reverse the entry of summary judgment. *McGee v. Bonaventura*, 605 N.E.2d 792, 793 (Ind.Ct.

App.1993). A fact is material for summary judgment purposes if its resolution is decisive of either the action or a relevant secondary issue. *N. Ind. Pub. Serv. Co. v. E. Chicago Sanitary Dist.*, 590 N.E.2d 1067, 1072 (Ind.Ct.App.1992). A factual issue is genuine if those matters properly considered under T.R. 56 evidence a factual dispute requiring the trier of fact to resolve the opposing parties' different versions. *Id.*

### II. Wilson's Claims

#### A. Negligence

■ Wilson contends that the trial court erred in entering summary judgment because genuine issues of material fact exist regarding Lincoln's purported negligence. Specifically, Wilson argues that the FHA mortgage was never realized and effected because Lincoln failed to pay a mortgage insurance premium to HUD and it did not obtain the appropriate inspections in a timely manner.

■ In resolving this issue, we first note that to succeed on a negligence claim, Wilson must establish: (1) a duty owed to him by Lincoln; (2) a breach of that duty by Lincoln; and (3) an injury resulted that was proximately caused by Lincoln's breach. *See Kincade v. MAC Corp.*, 773 N.E.2d 909, 911 (Ind.Ct.App.2002). In an attempt to establish a duty with respect to the negligence claim, Wilson asserts that Lincoln and Wilson shared a fiduciary relationship of special trust and confidence. However, a business or "arm's length" contractual relationship does not give rise to a fiduciary relationship. *Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 125–26 (Ind.Ct.App.1992). That is, the mere existence of a relationship between parties of bank and customer or depositor does not create a special relationship of trust and confidence. *Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413,

419 (Ind.Ct.App.2002). In the context of a mortgagor/mortgagee relationship, mortgages do not transform a traditional debtor-creditor relationship into a fiduciary relationship absent an intent by the parties to do so. Absent special circumstances, a lender does not owe a fiduciary duty to a borrower. *Huntington Mortgage Co. v. DeBrota*, 703 N.E.2d 160, 167 (Ind.Ct.App. 1998). Moreover, it must be shown that the dominant party wrongfully abused the confidence by improperly influencing the weaker so as to obtain an unconscionable advantage. *Kreighbaum*, 776 N.E.2d at 419.

Here, the heart of Wilson's claim is that Lincoln owed him a duty "to comply with the requirements necessary to qualify his mortgage loan as an FHA loan." Appellant's Br. p. 9. However, it is apparent that Lincoln waived FHA insurance once it became apparent that HUD would not insure Wilson's loan. The unavailability of FHA insurance did not cause Lincoln to withdraw its mortgage loan. To be sure, Wilson still received the mortgage loan that he needed to purchase his residence even though Lincoln did not have FHA backing of the mortgage.

In an attempt to demonstrate harm, however, Wilson alleges that "[h]ad Lincoln Federal actually performed as it undertook to do, the FHA-insured loan on which the parties closed would not have led to a foreclosure, because Lincoln Federal would have been paid by HUD if Wilson defaulted." Appellant's Br. p. 8. Such an argument is flawed, though, inasmuch as FHA insurance does not permit a borrower to default on a loan with impunity. To the contrary, HUD's regulations clearly demonstrate that a mortgagor's default will work a foreclosure on the property unless alternate financing terms are agreed upon. 24 C.F.R. § 203.355–.371. Caselaw from at least one other jurisdic-

tion has also supported this notion. *See Kilmer v. Citicorp Mortgage, Inc.*, 860 P.2d 1165, 1168 (Wyo.1993) (holding that federal mortgage insurance is not an alternate mechanism for the repayment of defaulted loans which extinguishes a mortgagor's obligation thereon or its liability for a deficiency judgment).

We also fail to see, contrary to that urged by Wilson, that Lincoln somehow benefited from offering Wilson a conventional mortgage rather than an FHA-insured loan. Wilson has failed to designate any evidence supporting this proposition. Additionally, we note that even though Wilson maintains that Lincoln somehow assumed a duty to provide him with an FHA-insured mortgage loan, the record reflects otherwise. The undisputed facts demonstrate that Wilson knew he had no right to rely on HUD mandated inspections. For instance, at the outset of the loan discussions between the parties, Wilson executed an FHA form acknowledging the need for the borrower to obtain an independent home inspection. Specifically, the document that Wilson signed stated: "FHA does not guarantee the value or condition of your potential new home.... That's why it is so important for you, the buyer, to get an independent home inspection. Ask a qualified home inspector to inspect your potential new home and give you the information you need to make a wise decision." Appellant's App. p. 80. Because Wilson acknowledged that he had no right to rely upon home inspections that would satisfy HUD, it cannot fairly be said that Lincoln assumed any duty to Wilson by arranging a HUD-required inspection for the septic system.

■ Finally, in support of his claim that summary judgment should not have been granted to Lincoln because it acted as Wilson's mortgage broker and therefore assumed a duty, the record establishes

that Lincoln was a federally chartered savings bank authorized to make mortgage loans. Lincoln was the originating lender, the payee on the note, the mortgagee and the holder of the loan. Thus, there is no merit to Wilson's argument that Lincoln was a mortgage "broker," inasmuch as it originated and serviced the loan to Wilson. Thus, Wilson's arguments regarding Lincoln's purported negligence must fail, and we conclude that the trial court properly entered summary judgment for Lincoln on this basis.

### B. Breach of Contract Claim

Wilson next argues that the designated evidence fails to support the grant of summary judgment for Lincoln because genuine issues of material fact exist with regard to his breach of contract claim. Specifically, Wilson urges that the record supports his claim that Lincoln breached the contract because: (1) it failed to remit the mortgage insurance premium to HUD; (2) it failed to arrange for a septic inspection until after Wilson had closed on the residence under the belief that he had an FHA-insured mortgage; and (3) Lincoln's refusal to accept the first mortgage payment constituted a prior breach of the mortgage and note that voids Wilson's obligations to make payments under the note.

 In addressing these contentions, we first note that the elements of a breach of contract action include: the existence of a contract; the defendant's breach of that agreement and damages. Here, the only contract that exists between Lincoln and Wilson is the loan contract evidenced by the note and the mortgage. *Hopper v. Colonial Motel Properties, Inc.,* 762 N.E.2d 181, 187 (Ind.Ct.App.2002), *trans. denied.* Contrary to Wilson's contention, there was no contract between Lincoln and Wilson regarding an alleged agreement by

Lincoln to act as Wilson's agent in obtaining an FHA-insured mortgage for Wilson. It is apparent from the record that Lincoln was not contractually obligated to Wilson to timely arrange for a septic inspection nor was it contractually obligated to remit the mortgage insurance premiums.

 Wilson, however, points to paragraph 9(e) of the mortgage agreement in support of his breach of contract claim. That provision states that Lincoln may not accelerate the loan balance if the failure to obtain FHA insurance is "solely due to Lender's failure to remit a mortgage insurance premium." Appellant's App. p. 160. Contrary to Wilson's assertion, Lincoln foreclosed because of Wilson's failure to make monthly payments on the loan. Thus, contrary to Wilson's claim, paragraph 9(e) of the contract does not apply here.

 Finally, Wilson maintains that Lincoln's refusal to accept payment toward the mortgage he tendered constituted a prior breach of contract that effectively released Wilson from his obligation to make any future payments. In addressing this argument, we note that where a party is in material breach of a contract, he may not maintain an action against the other party or seek to enforce the contract against the other party if that party later breaches the contract. *Harvest Life Ins. Co. v. Getche,* 701 N.E.2d 871, 875 (Ind.Ct. App.1998), *trans. denied.* Whether a party is in material breach of contract is a question of fact contingent on the following factors:

(a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

(b) The extent to which the injured party may be adequately compensated in

damages for lack of complete performance;

(c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

(d) The greater or less hardship on the party failing to perform in terminating the contract;

(e) The willful, negligent or innocent behavior of the party failing to perform;

(f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract.

*Tomahawk Village Apts. v. Farren,* 571 N.E.2d 1286, 1293 (Ind.Ct.App.1991).

In considering these factors with respect to the circumstances here, the record demonstrates that Wilson received the entire benefit of his loan because Lincoln fully funded it. Additionally, Wilson has failed to show that he suffered any compensable injury from Lincoln's purported refusal to accept the mortgage payment. Moreover, Lincoln substantially performed its obligation under the note by providing the $94,854 loan to Wilson. The cancellation of the note and mortgage imposes an obvious and substantial hardship on Lincoln and creates a windfall for Wilson.

With respect to Wilson's arguments that Lincoln may not sue him for breach of contract because of its initial refusal to accept payment, it has been said that "if the failure to perform or delay in performance is not sufficiently material, the injured party is not discharged or excused, but retains his duty to perform, i.e., there is still a breach of contract but the innocent party must recoup his loss for the immaterial breach while he is still bound to perform." Murray on Contracts, § 107 (2001). Under this theory, even if it could be said that Lincoln breached the note by refusing Wilson's initial payment, Wilson has made no showing that such action was material to the extent that he should not have been required to make even a single payment over a two-year period of time. Under these circumstances, it would work an injustice were we to hold that Lincoln's refusal to accept the initial payment of $712.61 could result in a substantial windfall to Wilson. What is more, even though Wilson acknowledges that he may reinstate the loan under the contract, he has never made any attempt to do so. Thus, what remains is that while Wilson has accepted the full benefit of the loan that Lincoln made to him, he has refused to make any payments toward that obligation. As a result, Wilson may not successfully claim that genuine issues of material fact remain with respect to his breach of contract claim.

Judgment affirmed and remanded for further proceedings consistent with this opinion with instructions that the trial court calculate the amount of principal and interest that Wilson owes on the note.

SULLIVAN, J., and DARDEN, J., concur.