**Naomi and Grant STEWART, Appellants–Defendants,**

**v.**

**CITY OF INDIANAPOLIS, Appellee–Plaintiff.**

No. 49A02–0305–CV–408.

Court of Appeals of Indiana.

Oct. 28, 2003.

Karen C. Horseman, Indianapolis, IN, Attorney for Appellants.

James B. Osborn, Assistant Corporation Counsel, Office of Corporation Counsel, Indianapolis, IN, Attorney for Appellee.

### OPINION

KIRSCH, Judge.

After Naomi and Grant Stewart's dog, Sheba, bit a child on three different occasions, the City of Indianapolis brought suit against them for violating the ordinance addressing the way in which dangerous animals are kept. The Stewarts appeal several aspects of the trial court's decision. Because it is dispositive, we restate and address only this issue:

Whether the trial court erred in granting summary judgment in favor of the City on its complaint requesting an injunction and fines against the Stewarts for violating the ordinance prohibiting dangerous animals from being unconfined and unrestrained where the incidents alleged all took place on the Stewarts' property from which the dog was unable to escape.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The Stewarts own a retriever mixed-breed dog named Sheba. The back yard of their home is enclosed by a six-foot tall privacy fence which has a single gate that is shorter than six feet tall, but taller than Sheba. Their front yard is bounded by an "invisible fence" on which Sheba is trained. On March 28, 2001, C.H., a child, was playing with the Stewarts' children in the Stewarts' back yard. As C.H. swung on the Stewarts' swingset, Sheba growled at and then bit C.H.

On July 28, 2001, the Stewarts placed Sheba inside their garage. They raised the garage door high enough to allow air to circulate, but low enough that Sheba could not get out. C.H. was playing with the Stewarts' children, who were placing their hands under the garage door to pet Sheba. When C.H. refused to do the same, one of the Stewarts' children grabbed C.H.'s hand and forced it under the garage door. Sheba again bit C.H.

On June 26, 2002, M.P., a child, was playing with the Stewarts' children in their driveway. Grant Stewart exited his home through the front door, then reentered the home, leaving the front door open. Sheba exited the home through the front door, ran to the driveway, and bit M.P.

On August 14, 2002, the City filed its amended complaint for injunction and fine against the Stewarts for violating Section 531–205 of the municipal code of Indianapolis based on the three biting incidents. Counts I, III, and IV of the amended complaint allege that the Stewarts violated the ordinance by "allowing the dog named 'Sheba' to go unconfined and unrestrained on their premises so that it attacked [the children] without being provoked by [them]." *Appellee's Appendix* at 3–4. Count II alleged that the Stewarts violated the ordinance by allowing Sheba to be at large. The City asked the trial court to fine the Stewarts $2500 for each violation and to permanently enjoin the Stewarts from allowing any animal from going unconfined and unrestrained on their premises or to run at large in the City.

The City and the Stewarts then filed cross-motions for summary judgment on Counts I, III, and IV. The trial court granted summary judgment in favor of the City on Counts I and IV and denied summary judgment to either party on Count III. It then entered a permanent injunction and assessed a fine against the Stewarts. The Stewarts now appeal.

## DISCUSSION AND DECISION

The Stewarts maintain that the trial court erred in granting summary judgment in favor of the City on Counts I and IV of the City's amended complaint because at the time of the incidents, their dog, Sheba, was confined within the meaning of the ordinance.

In reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1046 (Ind.Ct.App.2003); *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d

110, 115 (Ind.Ct.App.2003). We do not weigh evidence, but will liberally construe the facts in the light most favorable to the nonmoving party. *Wilson,* 790 N.E.2d at 1045–47; *Ross,* 790 N.E.2d at 116. Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Poznanski ex rel. Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003); *Reeder v. Harper,* 788 N.E.2d 1236, 1240 (Ind.2003); *Wilson,* 790 N.E.2d at 1046; *Ross,* 790 N.E.2d at 115. Accordingly, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Wilson,* 790 N.E.2d at 1046. The party appealing the grant of summary judgment has the burden of persuading this court on appeal that the trial court's ruling was improper. *Id.; Ross,* 790 N.E.2d at 116.

To obtain summary judgment, the moving party, relying on specifically designated evidence, must make a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Ross,* 790 N.E.2d at 115. If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Poznanski,* 788 N.E.2d at 1258; *Ross,* 790 N.E.2d at 115. Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Ross,* 790 N.E.2d at 115.

Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Id.* at 116. A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.* In addition, where, as here, the parties filed cross-motions for summary judgment, our standard of review is not altered. *Id.* We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

■ Section 531–205 of the municipal code of Indianapolis states in pertinent part:

"(a) For purposes of this section, the words *vicious, fierce or dangerous animal* mean and include an animal which has:

(1) Attacked a person without having been provoked by that person;

(2) Attacked, at some place other than its owner's or keeper's property, another animal; or

(3) Chased or approached a person at some place other than its owner's or keeper's property, in a menacing fashion or apparent attitude of attack.

(b) It shall be unlawful for an owner or keeper of a vicious, fierce, or dangerous animal to cause, suffer, or allow it to go unconfined and unrestrained on the owner's or keeper's premises, or to run at large, in the city."

Accordingly, in order to violate the ordinance, the owner or keeper of the animal in question must have permitted the dog to be unconfined and unrestrained. Neither of these terms is defined by the ordinance.

The rules relating to statutory construction are equally applicable to construing ordinances. *Plesha v. Edmonds ex rel. Edmonds,* 717 N.E.2d 981, 986 (Ind.Ct.

App.1999), *trans. denied* (2000). When interpreting a legislative enactment, the words and phrases employed are to be given their plain, ordinary, and usual meaning unless a contrary purpose is clearly shown. *Essany v. Bower*, 790 N.E.2d 148, 151 (Ind.Ct.App.2003); *Gary/Chicago Airport Bd. of Authority v. Maclin*, 772 N.E.2d 463, 471 (Ind.Ct.App. 2002); *State v. Eilers*, 697 N.E.2d 969, 970 (Ind.Ct.App.1998). In determining the plain and ordinary meaning of a term, courts may use English language dictionaries as well as consider the relationship with other words and phrases. *Essany*, 790 N.E.2d at 151; *Eilers*, 697 N.E.2d at 971.

Interpreting another city's animal control ordinance, we have explained that the word "restrain" means to actively control and prevent conduct, rather than mere containment. *Plesha*, 717 N.E.2d at 986–87 (citing Black's Law Dictionary 1214 (6th ed.1991) (confinement or holding back from action); American Heritage Dictionary 1438 (3d ed.1992) (to hold back or keep in check; control)). We have not had previous occasion to define the term "confine" in this context, so we look instead to the dictionary. "Confine" means "to keep within limits; restrict." Webster's New World Dictionary 298 (2d college ed.1970).

In this case, the undisputed designated evidence related to Count I establishes that at the time Sheba bit C.H., she was confined in the back yard of the Stewarts' home which was bounded by a six-foot tall privacy fence. The fence had a single gate, which was shorter than six feet tall, but taller than Sheba. Thus, at the time of the incident, Sheba may have been "unrestrained," but was not "unconfined" within the meaning of the ordinance because her movement was restricted to the Stewarts' back yard. Because an owner or keeper violates the ordinance only when the animal is both "unrestrained" and "unconfined," the Stewarts did not violate the ordinance on this occasion. The trial court erred in granting summary judgment in favor of the City, and the Stewarts are entitled to summary judgment on this count of the City's complaint.

■ Likewise, the undisputed evidence related to Count III establishes that at the time of the incident, Sheba was confined to the garage of the Stewarts' home and that the garage door was lowered sufficiently to prevent her escape. Again, this evidence shows that the Stewarts did not violate the ordinance because they did not permit Sheba to go "unconfined." Rather, Sheba's movement was restricted to the Stewarts' garage. The Stewarts are entitled to summary judgment on this count as well.

■ Finally, the undisputed evidence related to Count IV shows that at the time Sheba bit M.P., M.P. was playing in the driveway of the Stewarts' home when Sheba exited the home through the open front door and entered the front yard. The evidence also establishes that an invisible fence bounded the Stewarts' front yard and was powered on at the time of the incident. Further evidence showed that Sheba was trained not to cross the "fence" and was wearing a collar that would have caused her to be shocked if she tried to exit the area bounded by the fence. Sheba may have been "unrestrained" but was not "unconfined" under the circumstances because her ability to move was kept within limits by the invisible fence. Accordingly, we hold that the trial court erred in granting summary judgment in favor of the City. The Stewarts were entitled to summary judgment on this count as well.

Reversed.

BAILEY, J., and VAIDIK, J., concur.