## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2018, 10:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel J. Paul
Williams Barrett & Wilkowski, LLP
Greenwood, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Walbert W. Ferguson, <br> *Appellant-Defendant,* <br><br> v. <br><br> Teresa Green, <br> *Appellee-Plaintiff.* | June 13, 2018 <br><br> Court of Appeals Case No. <br> 49A04-1709-PL-2164 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable James B. Osborn, Judge <br><br> Trial Court Cause No. <br> 49D14-1509-PL-32351 |

**Barnes, Judge.**

# Case Summary

Walbert Ferguson appeals the trial court's grant of summary judgment in favor of Teresa Green and the denial of his motion for summary judgment. We affirm in part, reverse in part, and remand.

# Issue

The restated issue before us is whether the trial court properly granted summary judgment to Green and denied it to Ferguson in a breach of contract action between the parties.

# Facts

Ferguson, who owned a trucking company, was involved in a romantic relationship with Green from the fall of 2010 to May 2012. During that time, Ferguson agreed to help Green enter the trucking business by purchasing a Peterbilt truck with a loan from Bank of the Ozarks and a Great Dane trailer with a loan from ACG Financing; in turn, Green was allowed to use the truck and trailer. She also apparently made some payments toward the loans used to purchase the truck and trailer.

On June 3, 2012, at the end of the parties' relationship, they entered into a contract for Green to buy the truck and trailer from Ferguson. The loans from Bank of the Ozarks and ACG for the truck and trailer were not yet paid off, nor were they explicitly mentioned in the contract. An attorney for Green wrote and printed a contract, which Green then presented to Ferguson without the attorney present. In paragraph one of the contract, the truck and trailer were

identified by VIN.  Next to the VIN for the truck, Ferguson handwrote "36 x 1507.00," and next to the VIN for the trailer he wrote "48 x 804.00."  App. Vol. II p. 7.  Paragraph two of the contract provided:

> PURCHASE PRICE.  Buyer agrees to continue to pay Seller one thousand five hundred seven dollars ($1,507.00) per month for the truck, listed in 1(a) above, by cashier's check, due on the seventh (7th) of each month, until such time as the balance of approximately forty four thousand dollars ($44,000.00) is paid in full, at which time Seller will transfer title of the truck to Buyer.
>
> Buyer agrees to continue to pay Seller eight hundred four dollars ($804.00) per month for the refrigerated trailer, listed in 1(b) above, by cashier's check, due on the twenty fifth (25th) of each month, until such time as the balance of approximately twenty seven thousand dollars ($27,000.00) is paid in full, at which time Seller will transfer title of the refrigerated trailer to Buyer.

*Id.* at 7-8.  The strikethroughs of the numerals in paragraph two were done by Ferguson.  Ferguson would later say that he had scratched out the numerals because he was not entirely sure what the balance was for the truck and trailer.

[5]     Between March 2012 and February 2014, Green paid $43,788.65 in check or electronic fund transfers toward the truck.  Through November 2012, Green made these payments directly to Ferguson; beginning in June 2013, Green paid Bank of the Ozarks directly.  There was a gap between November 2012 and June 2013 when Green did not make payments toward the truck, except for possibly one for $2,600.00, which Ferguson disputes having been made.  Green

also later claimed she paid Ferguson $4,521.00 in cash toward the truck, which Ferguson also disputes.

[6] On March 7, 2014, Bank of the Ozarks wrote Ferguson a letter informing him that it had released its lien from the truck and it had no further interest in the truck. Green thereafter demanded that Ferguson transfer title to the truck to her, but he refused to do so. Up until March 2014, Green had made regular payments of $810 monthly toward the trailer in a total amount of $21,060.00, with some of those payments having been made before the June 2012 contract. However, when Ferguson refused to transfer title to the truck to Green, she stopped making payments on the trailer.

[7] On September 30, 2015, Green sued Ferguson, seeking specific performance to compel him to transfer title to the truck to her, as well as damages. Ferguson's answer included a counterclaim that Green had breached the written contract as to both the tractor and the trailer by not making payments as required. Additionally, Ferguson stated a counterclaim that he and Green had entered into an oral contract for Green to reimburse Ferguson for credit card charges and other expenses he had incurred on Green's behalf to help her begin her own trucking business; Ferguson later specified that these alleged expenses totaled $44,186.89.

[8] On January 18, 2017, Ferguson filed a motion for summary judgment as to Green's claim against him and his counterclaims against her. After obtaining several extensions of time, Green filed her response on May 23, 2017.

Although only captioned as a response to Ferguson's summary judgment motion, it also requested "that the Court enter summary judgment in favor of Buyer on Seller's Counterclaims as well as on Buyer's Complaint as to liability and damages . . . ." App. Vol. V p. 8. On June 20, 2017, Ferguson filed a motion for an extension of time to respond to Green's purported cross-motion for summary judgment, so he could take Green's deposition. The trial court originally granted this motion. However, upon Green's motion for reconsideration, the trial court reversed itself and denied any extension to Ferguson.

[9] On September 12, 2017, the trial court granted summary judgment in favor of Green on her claim that Ferguson breached the written contract by not transferring title to the truck to her. It also concluded that Green was excused from further performance under the contract—i.e., she did not have to continue paying for the trailer—because of Ferguson's breach of contract. The trial court also denied summary judgment for both parties on Ferguson's counterclaim that Green breached an oral contract for repayment of expenses, finding genuine issues of material fact existed on that claim.

[10] Ferguson appealed. On January 11, 2018, Green timely filed a request for an extension of time to file an appellee's brief; this court granted the motion and extended the deadline to February 14, 2018. Green did not file a brief by this date. On March 20, 2018, Green filed a second motion for an extension of time to file a brief. Although this motion was filed after the original extended brief-filing deadline and Ferguson opposed any further extension, we exercised our

discretion to allow an additional period of time for Green to file a brief, until May 4, 2018. Still, Green has not filed a brief.[1] We now proceed to decide this appeal.

## Analysis

As noted, Green has not filed an appellee's brief. In such a case, we will not develop an argument on behalf of the appellee and may reverse if the appellant can demonstrate prima facie error. *State v. Miracle*, 75 N.E.3d 1106, 1108 (Ind. Ct. App. 2017). Prima facie error is error at first sight, on first appearance, or on the face of it. *Id.* This less stringent standard of review does not relieve us of our obligation to correctly apply the law to the facts in the record to determine whether reversal is required. *Id.*

We review a summary judgment ruling de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Drawing all reasonable inferences in favor of . . . non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting Ind. Trial Rule 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of

---

[1] After reviewing the multiple requests by Green's counsel for extensions of time in the trial court as well as this court, we must express our concern over counsel's inability to meet deadlines, and we advise him to be more diligent in the future.

the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.*

[13] A party seeking summary judgment in Indiana must "affirmatively negate" the opposing party's claim. *Hughley*, 15 N.E.3d at 1003. "In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004. A party's self-serving, sworn affidavit is sufficient to defeat summary judgment, even if it appears that party is unlikely to be successful at trial. *Id.* at 1005.

### A. Written Contract

[14] We first address whether the trial court correctly entered summary judgment in Green's favor on her breach of contract claim against Ferguson for failing to transfer the truck title to her. When, as here, a trial court has entered summary judgment in a contract dispute, it necessarily has determined either that: 1) the contract is not ambiguous or uncertain as a matter of law and the trial court need only apply the terms of the contract; or 2) the contract is ambiguous, but the ambiguity may be resolved without the aid of factual determinations. *Jenkins v. South Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. When interpreting a contract, the primary goal is to determine the intent of the parties when they made the agreement. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017), *trans. denied*. Courts must examine the plain language of the contract, read it in context and, whenever possible, construe it in a way that renders every word, phrase, and term meaningful, unambiguous, and harmonious with the whole. *Id.* "Construction

of the terms of a written contract generally is a pure question of law." *Id.* If contract language is unambiguous, courts may not look to extrinsic evidence to expand, vary, or explain the instrument but must determine the parties' intent from the four corners of the instrument. *Id.*

If, however, a contract is ambiguous, the parties may introduce extrinsic evidence of its meaning, and interpretation generally becomes a question of fact. *Id.* A mere disagreement about the meaning of a contract word or phrase does not make it ambiguous; an ambiguity arises only if reasonable people could differ as to its meaning. *Id.* Courts may properly consider all relevant evidence to resolve a contract ambiguity and to give effect to the intent of the parties when they entered into the contract. *Id.* Such evidence is evidence relating to a contract but not appearing on the face of the contract and may include statements between the parties or the circumstances surrounding the agreement. *Id.* "An ambiguous contract should be construed against the party who furnished and drafted the agreement." *Id.*

We readily conclude that there is an ambiguity in the contract terms with respect to how much Green was expected to pay for the truck and the trailer. The original, printed contract prepared by Green's lawyer stated that Green was to pay "approximately" $44,000.00 for the truck and $27,000.00 for the trailer. App. Vol. II pp. 7-8. However, above this part of the contract, next to where the truck and trailer were identified by VIN, Ferguson wrote in for the truck "36 x 1507.00," and "48 x 804.00" for the trailer. *Id.* at 7. Thirty-six times $1,507.00 equals $54,252.00, and forty-eight times $804 is $38,592.00.

Ferguson asserts that Green actually was expected to pay closer to $54,252.00 for the truck and $38,592.00 for the trailer and, therefore, he was not required to sign over the title to the truck when Green had paid only approximately $44,000.00 for the truck.

[17]     It is unclear whether the trial court believed the contract was unambiguous, or if it believed it was ambiguous but no weighing of evidence was required to determine the intent of the parties. The contract and designated evidence, however, demonstrates both that the contract is ambiguous and that weighing of evidence—i.e., comparison of what Ferguson and Green each thought the contract meant—is necessary to resolve that ambiguity. On its face, the contract makes no express reference to the outstanding loans for the truck and trailer, which Green asserted was all she had to pay. Evidence related to those loans is extrinsic to the contract, but no documentary evidence was designated regarding the loans, such as their terms and their outstanding balances when the contract was executed. There was no language in the contract specifying that either lender's release of its lien against the truck or trailer would trigger Ferguson's obligation to transfer title to Green. And, rather than repaying the loans directly to the Bank of the Ozarks and ACG, the contract specified that Green was to pay Ferguson. This language—along with saying that Green had to pay "approximately" $44,000.00 for the truck and $27,000.00 for the trailer—leaves open the possibility that Green was expected to pay more to Ferguson than what was merely outstanding on the loans. The trial court improperly concluded that there were no genuine issues of material fact and

that Green was entitled to judgment as a matter of law—and title to the truck—because of the ambiguous contract language and her payment of significantly less than $54,252.00 toward the truck.

[18]   That said, we also reject Ferguson's argument that he was entitled to summary judgment against Green on this claim. The contractual ambiguities and questions of fact cut both ways. Although Ferguson contends that we should construe the contract against Green because her attorney drafted the original, printed version of it, that rule does not apply here because it was Ferguson's handwritten additions to the contract that created or at least greatly contributed to the ambiguities.

[19]   Ferguson also contends that, even if a court accepts Green's interpretation of the contract—that she only had to pay approximately $44,000.00 for the truck—she breached the contract based on the clear provision that she was to pay $1,507.00 per month toward the truck. Putting aside questions of fact as to some payments Green claimed she made that Ferguson claimed were not actually made, it is undisputed that there was a period of several months between November 2012 and June 2013 when Green was not making regular monthly payments for the truck. Even if this did constitute a breach of contract, however, it does not automatically mean Ferguson had an actionable breach of contract claim or was entitled to breach the contract himself. To sustain a breach of contract action, a party must prove the existence of a contract, a defendant's breach of its terms, *and* resulting damages. *Murat Temple Ass'n, Inc. v. Live Nation Worldwide, Inc.*, 953 N.E.2d 1125, 1128-29 (Ind. Ct.

App. 2011), *trans. denied*. Damages are not presumed merely because there has been a breach of contract but must be supported by the evidence and ascertainable with reasonable certainty. *Dana Companies, LLC v. Chaffee Rentals*, 1 N.E.3d 738, 748 (Ind. Ct. App. 2013), *trans. denied*. Moreover, if a party to a contract consistently makes late payments but the other party consistently accepts such payments, does not attempt to strictly enforce the contract, and does not show how he or she was damaged by the late payments, that party may not later sustain a breach of contract action based on the late payments. *Unishops, Inc. v. May's Family Centers, Inc.*, 399 N.E.2d 760, 766 (Ind. Ct. App. 1980). The designated evidence does not indicate how Ferguson was damaged by Green's purported breach of contract in missing or belatedly making some payments but ultimately paying approximately $44,000.00 toward the truck, if indeed that was all that she owed. Ferguson has not established that he is entitled to judgment as a matter of law based on those missed or belated payments.

[20] On a final note related to the written contract, Green's refusal to continue paying for the trailer after Ferguson refused to transfer title of the truck to her was not necessarily an actionable breach of contract on her part. When a party is in material breach of a contract, he or she may not maintain an action against the other party or seek to enforce the contract against the other party if that party later breaches the contract. *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1048 (Ind. Ct. App. 2003). If Green's interpretation of the contract ultimately prevails, it would mean Ferguson could not maintain a breach of

contract action against Green based on her cessation of payments for the trailer because it followed Ferguson's own breach of contract for not transferring the truck title to her.

[21] In sum, the intent of the parties when they executed the final version of the written contract, which included Ferguson's handwritten additions, as well as whether Green breached the contract and caused Ferguson damages, must be resolved by a fact finder and not by summary judgment.

### B. Oral Contract

[22] We now address Ferguson's contention that he was entitled to summary judgment on his claim that Green breached an oral contract to repay him for expenses he purportedly paid to help her establish a trucking business. For an oral contract to exist, there must be an offer, acceptance, and consideration, and agreement to all terms of the contract. *Town of Knightstown v. Wainscott*, 70 N.E.3d 450, 459 (Ind. Ct. App. 2017), *trans. denied*. "To be valid and enforceable, a contract must be reasonably definite and certain." *Id.* Whether a certain set of undisputed facts establishes a contract is a question of law. *City of Indianapolis v. Twin Lakes Enterprises, Inc.*, 568 N.E.2d 1073, 1079 (Ind. Ct. App. 1991), *trans. denied*. However, where the existence and not the validity or construction of a contract or the terms thereof is at issue, and the evidence is conflicting or admits of more than one inference, it is for a fact finder to determine whether a contract in fact exists. *Id.*

Here, Ferguson acknowledges that Green designated as evidence a sworn affidavit stating in part:

> The only agreement that related to the Truck and Trailer was the [written] Contract. There was no secondary agreement, written or otherwise, between Buyer and Seller, including, without limitation, any agreements that related to repayment of expenses and/or credit card charges arising prior to the Contract or after the Contract for that matter. Any and all credit charges made by Buyer through June of 2012 were made for the benefit of Seller's Business at Seller's Request. Any and all charges that were authorized by Seller for the sole benefit of Buyer were reimbursed even though there was never an agreement to make such reimbursements. Buyer has no unpaid credit card charges, expenses or down payments owing to Seller of any kind or nature whatsoever nor by way of any agreement. The sole Agreement between the parties is set forth in the [written] Contract.

App. Vol. V p. 38. Ferguson attempts to discredit Green's affidavit by claiming that it is "self-serving." Appellant's Br. p. 25. Even if it is—and we are not sure that it is—Indiana law is clear that sworn affidavits regarding a disputed fact are sufficient to defeat summary judgment, regardless of whether the affidavit is self-serving and minimal. *Hughley*, 15 N.E.3d at 1003.

Ferguson also contends that Green's attorney admitted at the summary judgment hearing that Green paid Ferguson $18,000.00 toward certain trucking expenses and that this necessarily proves the existence of a contract for Green to pay more than that amount. This payment also is explained in Green's affidavit and does not as a matter of law establish that there was an oral contract for her to pay anything else. *Cf. Perkins v. Owens*, 721 N.E.2d 289, 292

(Ind. Ct. App. 1999) (holding that, for purposes of excepting oral contract for sale of real estate from statute of frauds requiring a written contract, partial payment is insufficient to constitute partial performance of alleged contract). Even if it was part of an agreement of some kind, Green's payment of $18,000.00 does not necessarily establish all the terms of an oral contract between Ferguson and Green. Ferguson's claim regarding an oral contract presents a literal "he said/she said" situation that will require sorting out by a fact finder and is inappropriate for resolution by summary judgment.

## Conclusion

[25] This case is laden with questions of fact, both as to the meaning of the ambiguous written contract and its performance, and as to the existence of a separate oral contract and its performance, if there was one. As such, neither party was entitled to summary judgment. We affirm the denial of Ferguson's motion for summary judgment, reverse the grant of summary judgment in favor of Green, and remand for further proceedings.[2]

[26] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Pyle, J., concur.

---

[2] Given our reversal of the grant of summary judgment and remand for further proceedings, we deem it unnecessary to address whether the trial court improperly denied Ferguson an extension of time to respond to Green's purported cross-motion for summary judgment.