**Joseph E. TONS, Appellant–Defendant,**

v.

**Barbara C. BLEY, Appellee–Plaintiff.**

No. 44A03–0312–CV–501.

Court of Appeals of Indiana.

Sept. 29, 2004.

---

Cheryl L. Weimer, Bill D. Eberhard, Jr., LaGrange, IN, Attorneys for Appellant.

Michael M. Yoder, Kendallville, IN, Attorney for Appellee.

## OPINION

RATLIFF, Senior Judge.

### *STATEMENT OF THE CASE*

Joseph E. Tons appeals from the granting of a protective order issued against him as to Travis Tons [1], Barbara Bley and Brian Bley and also prohibiting him from using or possessing a firearm, ammunition, or deadly weapon. We affirm in part and reverse in part.

---

1. Tons does not appeal the granting of the protective order as to Travis Tons.

## THE ISSUE

Here we are presented with the issue of whether there was sufficient evidence presented to warrant the issuance, pursuant to the Indiana Civil Protection Order Act[2], of a protective order as to Barbara Bley and Brian Bley and prohibiting Tons from using or possessing any firearms, ammunition, or deadly weapons.

## FACTS

Tons and Barbara Bley formerly were married and are the parents of Travis Tons, their thirteen year old son. Tons and Barbara were divorced in 1996. They have shared joint custody of Travis, although at the time of the incident leading to the filing of Barbara's petition for a protective order Travis was living with Barbara. Travis has not done well in school, which has been a matter of concern and the underlying cause of some of the problems involved in this matter. The controversy here arose because Travis wished to attend a rodeo and participate in bull riding. Tons had forbidden Travis from attending the rodeo until he improved his grades. Although he had been provided with tutors in the past, improvement of his grades had not occurred. Despite Tons objections, Travis did attend the rodeo. In a telephone conversation with Barbara, Tons told her that if she took Travis to see any counselors, tutors, or attorneys that he would come over and beat Travis black and blue. This led to the filing of the petition in this case. There also was evidence that Tons had physically struck Travis in November of 2002 and on other occasions. Barbara testified that Tons had not threatened her, although she did relate that there had been some violence towards her by Tons during their marriage, and she expressed a fear of him. There was no evidence of any

threats or acts of violence against Brian Bley, nor was there any evidence of any use or threats by firearms by Tons.

## DISCUSSION AND DECISION

Under the applicable statute, a court may issue a protective order upon a showing, by a preponderance of the evidence, of domestic violence. Ind.Code § 34–26–5–9(f). The statute provides that "[a] finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of the petitioner or a member of the petitioner's household." *Id.* The order issued in this case prohibited Tons from committing or threatening to commit acts of domestic or family violence against Barbara, Brian, or Travis, and prohibited Tons from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with Barbara. The order further prohibited Tons from using or possessing a firearm, ammunition, or deadly weapon.

The Civil Protective Order Act provides for the granting of relief necessary to bring about a cessation of the violence or threat of violence. Ind.Code § 34–26–95–9(f). Issuance of the types of injunctive relief granted by the order in this case is within the kinds of relief authorized by the Act. Ind.Code § 34–26–5–8(b). The Act further provides that the relief may include an order directing the respondent to surrender to a law enforcement officer or agency all firearms, ammunition, and deadly weapons in the control, ownership, or possession of the respondent, or of another person on respondent's behalf. Ind.Code § 34–26–5–9(f).

■ In *Garmene v. LeMasters,* 743 N.E.2d 782 (Ind.Ct.App.2001), a case de-

---

**2.** Ind.Code 34–26–5–1 *et seq.*

cided under the previous version of the protective order statute,[3] this court held that the petitioner for a protective order must prove by clear and convincing evidence at least one of the allegations of her petition. Indeed, the current statute places the burden of proving the same by a preponderance of the evidence. In *Garmene,* we reiterated the familiar test for determining the sufficiency of the evidence. We neither weigh the evidence nor resolve questions of credibility. We look only to the evidence of probative value and reasonable inferences that support the trial court's judgment. *Id.* at 785–86.

■ Viewed from the perspective of our standard of review, the evidence is sufficient to sustain the issuance of the protective order insofar as it applies to Travis. Tons does not challenge that portion of the order, and we affirm that part of the trial court's judgment.

■ The protective orders pertaining to Barbara and Brian present a serious problem. There is no evidence that Tons ever threatened Barbara, and she admitted that he did not. Any acts of violence by Tons against Barbara occurred during their marriage that ended in 1996. While the court may not deny the petition solely by reason of the lapse of time between the act of violence and the filing of the petition, Ind.Code § 34–26–5–13, we may consider remoteness in determining whether a sufficient threat exists to warrant the issuance of a protective order. We believe that unspecified acts of violence occurring eight years previously are a not sufficient basis for the issuance of a protective order. Therefore, we must reverse the protective order as it pertains to Barbara. Likewise

there is absolutely no evidence of any acts of violence, or threats, by Tons toward Brian. The protective order as to Brian is reversed.

■ That portion of the court's order regarding firearms, ammunition, and deadly weapons raises more concerns. In *Garmene,* we affirmed the order prohibiting the respondent from possessing firearms, on the grounds that he had pursued the petitioner at home and on her job and had verbally abused her. She testified that he made harassing phone calls, came to her place of employment, and sat outside her home monitoring her movements. She said this activity was very disturbing to her and that she didn't know what else he might do. We held the evidence was clear and convincing that the respondent posed a significant threat to inflict serious bodily injury and was sufficient to support the order prohibiting respondent's possession of any firearm.[4]

Here, there is no evidence that Tons committed any of the types of acts *Garmene* held sufficient to warrant issuance of the order that the respondent not possess or use any firearms, ammunition, or deadly weapons. Therefore, we reverse that portion of the protective order.

Affirmed in part and reversed in part as set forth above.

DARDEN, J., concurs.

BARNES, J., dissenting with separate opinion.

BARNES, Judge, dissenting.

I respectfully dissent. I believe Indiana Code Chapter 34–26–5, the Civil Protec-

---

3. Ind.Code § 34–26–2–1 *et seq.* (since repealed and replaced by the current act).

4. The then applicable statute required proof by clear and convincing evidence to warrant

an order prohibiting possessing a firearm. Ind.Code 34–26–2–12 (since repealed). The current version requires only a preponderance of the evidence. Ind.Code 34–26–5–9(f).

tion Order Act, was enacted by the General Assembly to provide the umbrella of protection that the trial court extended here.

Here, there is evidence in the record that Tons has in the past violently disciplined his son Travis, including punching him in the head with his fist and throwing him down a flight of stairs. Additionally, there was evidence of violence during the marriage between Barbara Bley and Tons. One may reasonably infer that Tons' threat to beat Travis "black and blue" implicitly extended to anyone who might interfere with that mission, including Barbara and her current husband, Brian Bley. I believe, as with any factual determination by a trial court, that we should defer to the court's conclusion here that not just Travis, but also Barbara and Brian, should fall under the scope of the protective order it issued.

I also note that under Indiana Code Section 34–26–5–9(b)(1), (4), and (6), a protective order may be ordered to apply not only with respect to the person petitioning for the order, but also with respect to "each designated family or household member." I believe this is tacit recognition by the General Assembly that when a respondent has threatened a petitioner with harm, other persons living with the petitioner who may not have been directly threatened are nevertheless at risk of harm by the respondent. I also conclude that the statute permits a protective order to be issued for the benefit of persons living with a threatened person, even if the respondent did not directly threaten those other persons.

With respect to the order prohibiting Tons from using or possessing a firearm, ammunition, or deadly weapon, I believe it is improper to rely on *Garmene v. LeMasters*, 743 N.E.2d 782 (Ind.Ct.App.2001), as demonstrating there was insufficient evidence to issue such an order in this case. In *Garmene*, we construed and applied the predecessor to the current protective order act, which did not allow restrictions on the possession of firearms and deadly weapons unless a court found, by clear and convincing evidence, that the respondent posed a significant threat of inflicting serious bodily injury to the petitioner or a member of the petitioner's household or family. *Id.* at 786 (citing Ind.Code § 34–26–2–12, now repealed).

The protective order statutory scheme is now completely different. There is no longer any requirement that a person seeking a protective order prove, by clear and convincing evidence, a significant threat of serious bodily injury before a respondent can be ordered not to possess firearms. Currently, Indiana Code Section 34–26–5–9(c)(4) provides that a court may, after notice and a hearing, "[p]rohibit a respondent from using or possessing a firearm, ammunition, or a deadly weapon specified by the court...." Additionally, Section 34–26–5–9(f) provides:

A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household. Upon a showing of domestic or family violence by a preponderance of the evidence, the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence. The relief may include an order directing a respondent to surrender to a law enforcement officer or agency all firearms, ammunition, and deadly weapons:

(1) in the control, ownership, or possession of a respondent; or

(2) in the control or possession of another person on behalf of a respondent;

for the duration of the order for protection unless another date is ordered by the court.

In my view, under the current scheme all that is needed to support an order prohibiting the possession of firearms or deadly weapons is a finding, by a preponderance of the evidence, that the respondent poses a credible threat to the safety of a petitioner or member of the petitioner's household, which is identical to what is needed to order the issuance of a protective order in the first place. There need be no separate evidence and finding specifically relating to firearms and weapons and a substantial threat of serious bodily injury. In this particular case, I am convinced in any event that given Tons' previously demonstrated violent tendencies, the trial court may reasonably have concluded that prohibiting Tons from possessing firearms or dangerous weapons was necessary to diminish the threat of violence to Travis, Barbara, and Brian.

I would affirm the trial court's order in its entirety.