Teresa TORRES, Appellant–
Respondent,

v.

**INDIANA FAMILY AND SOCIAL
SERVICES ADMINISTRATION,
Appellee–Petitioner.**

No. 49A04–0812–CV–719.

Court of Appeals of Indiana.

April 28, 2009.

Appellant's Br. p. 12–13 (internal citations and emphasis omitted).

Michael G. Moore, Indianapolis, IN, Attorney for Appellant.

Linda J. Cooley, Krieg DeVault LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Today, we have the occasion to construe various provisions of the Workplace Violence Restraining Orders Act[1] (WVROA). Appellant-respondent Teresa Torres appeals the judgment entered in favor of appellee-petitioner Indiana Family and Social Services Administration (FSSA), claiming that the trial court erred in entering a workplace violence restraining order (restraining order) against her. Specifically, Torres alleges that the evidence was insufficient to establish that her actions could be construed as a credible threat of violence that would cause a reasonable person to fear for his or her safety within the meaning of the WVROA. Concluding that the trial court properly entered a restraining order against Torres, we affirm.

### FACTS

Carol Baker is an employee of FSSA and serves as the assistant director of the Bureau of Rehabilitation Services. Baker's duties include overseeing Indiana's independent living centers and providing administrative support to the Indiana Council on Independent Living (ICOIL). ICOIL

---

1. Ind.Code §§ 34–26–6–1 to –15.

is a federally-mandated state council that oversees independent living services for people with disabilities in Indiana and facilitates interactions between the disabled individuals, independent living centers, and state agencies. Baker, as a non-voting member of ICOIL, is required to attend the meetings and is the only FSSA employee permitted to attend.

Torres has attended ICOIL meetings since the 1990s, and is the director of Everybody Counts, Inc., an independent living center in northwestern Indiana. Torres was appointed by the Governor as an ICOIL member in 2005. Torres has a moderate hearing loss and cannot delineate sounds or hear people speaking under certain conditions unless she uses an assistive listening device. Baker has known Torres through ICOIL for approximately two years.

Baker and other ICOIL personnel have witnessed outbursts from Torres during various ICOIL meetings. Baker and several ICOIL members have seen Torres yell and curse at various attendees. On one occasion, Torres overturned a chair. Melissa Madill, an ICOIL member, witnessed Torres throw objects and engage in verbal outbursts during at least fifteen meetings prior to April 9, 2008. During several of the meetings, Baker had to have the Capitol Police intervene because she feared for her and others' safety in light of Torres's conduct.

At the ICOIL meeting that was conducted on April 9, 2008, Torres was provided with an assistive listening device but continued to have difficulty hearing. At this meeting, most of the ICOIL members— including Baker—were seated at a large elongated "U-shaped" table and Torres was seated in the first row of the audience facing the table. Tr. p. 24, 52–53, 55, 73, 110.

Throughout the meeting, Torres complained to ICOIL personnel that her listening device was not working. Torres eventually removed the hearing device and threw it at the table, stating "this piece of sh*t doesn't work and I'm tired of telling you." Tr. p. 47, 107–09. Torres stood up, continued to yell, and began pacing the room with clenched fists.

At some point, Torres picked up the end of an eight-foot table and dropped it to the floor. Thereafter, she threw or kicked a chair into the table to get everyone's attention. Madill, who was seated behind the table, left the room before the meeting adjourned because she was frightened of Torres and did not feel safe. Thereafter, Torres screamed, "damn every one of you to hell" and "f* * * every one of you motherfu* * * *g sons of b* * * *es, I hope you all die. Do you hear me. I hope you die." *Id.* at 21.

ICOIL personnel adjourned the meeting because it could not conduct business in light of Torres' constant interruptions, outbursts, and use of foul language. Immediately after the adjournment, Torres jumped from her seat, started to yell again, and approached the table. Torres threw the listening device and charged toward Baker. Torres then leaned toward Baker and screamed: "And, you. You sit there just staring at me and not blinking. At least I don't have your disability. I'm not ugly. I just can't hear well." *Id.* at 15, 21–22, 43. Thereafter, Torres jerked a microphone from the table and grabbed a computer out of the hands of ICOIL's president, who is legally blind, and demanded to know who had purchased the equipment. Baker then called the Capitol Police to intervene because she felt threatened.

On June 13, 2008, FSSA filed a petition requesting a workplace violence restrain-

ing order for the benefit of Baker. In relevant part, the petition alleged that

c. Respondent regularly attends monthly meetings of the Council for Independent Living in Marion County.

5. Defendant has ... made a credible threat of violence against the employee by knowing or willing statements or a course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family.

. . .

b. Describe what happened (including the dates, who did what to whom, and any injuries): Respondent Teresa Torres has become verbally abusive, thrown metal objects, and approached Petitioner's employee, Carol Baker in a physically violent and threatening manner during several meetings of the Council for Independent Living meetings. Carol Baker is required to attend the council meetings during the course of her employment. Employee Carol Baker has also witnessed Torres throw objects at individuals who are seated next to Carol Baker. Details, including dates, time, and persons involved, are continued on Attachment 5b.

6. Employee will suffer great and irreparable harm before this petition can be heard in court unless the court makes those orders requested below effective now and until the hearing. (Specify the harm and why it will occur before the hearing): Employee and Respondent will be attending the same meeting to be held on the second Wednesday of each calendar month at the Indiana State Government Building, Indianapolis, Indiana.

7. Defendant's conduct has been directed against employee and is knowing and willful, is not constitutionally protected, and does not constitute lawful acts of self-defense or defense of others.

Appellant's App. p. 18–20. Baker also submitted an affidavit in support of the petition, detailing the specific facts and circumstances of Torres's actions and conduct at the ICOIL meetings. Baker concluded that

due to Torres' verbal outbursts and acts of physical aggression directed towards me I am fearful for my safety. I am also concerned that Torres may commit a battery on me in the future if she is not restrained from coming near me while I am at work, going to and from work, and at home.

*Id.* at 25.

The trial court conducted hearings on the petition on June 27, 2008, and July 25, 2008. Thereafter, the trial court granted FSSA's request and issued the restraining order against Torres that is to expire on August 1, 2009. The trial court determined that

Although the court may not find the Respondent threatening, her conduct, including her words and actions at the April 9th meeting of ICOIL, caused the Petitioner's employee, Carol Baker, and at least one witness to fear for their safety. The fact that most people attending the meeting were handicapped and less able to defend themselves from physical assault is significant, and the Respondent's comments and actions were unacceptable, no matter how frustrated she became or how much she disagreed with the staff and members of ICOIL.

Ms. Torres has many rights, including to make a record of the meetings, to protest decisions she dislikes, and to report any failure to accommodate her physical needs to the proper authorities. She does not have the right to disrupt a

public meeting in a way that makes others fear for their safety.

Appellant's App. p. 6. The trial court also ordered that Torres

   a.  Shall not batter or stalk the employee and other protected persons

   b.  Shall not follow or stalk the employee and other protected persons to or from the place of work

   c.  Shall not follow the employee and other protected persons during hours of employment

   d.  Shall not telephone or send correspondence to the employee and other protected persons by any means including, but not limited to, the use of public or private mails, interoffice mail, fax, or computer email

   e.  Shall not enter the workplace of the employee and other protected hours of employment

   f.  Other (specify):

6.  a.  Defendant is ordered to stay at least . . . 50 feet from Carol Baker

. . .

   (2)  Residence of Carol Baker.

   (3)  Office of Carol Baker.

*Id.* at 9. Torres now appeals.

### DISCUSSION AND DECISION

When reviewing Torres's claim challenging the sufficiency of the evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Holliday v. Crooked Creek Villages Homeowners Assoc., Inc.,* 759 N.E.2d 1088, 1091 (Ind.Ct. App.2001). We do not reweigh the evidence or judge the credibility of the witnesses. *Id.* at 1092. The judgment will be affirmed unless the evidence points incontrovertibly to an opposite conclusion. *Houchens v. Boschert,* 758 N.E.2d 585, 588 (Ind.Ct.App.2001). Finally, questions of

law are reviewed de novo without deference to a trial court's legal conclusions. *Bourbon Mini–Mart, Inc. v. Comm'r, Ind. Dep't of Envtl. Mgmt,* 806 N.E.2d 14, 20 (Ind.Ct.App.2004).

In 2002, the General Assembly enacted the WVROA. Pursuant to Indiana Code section 34–26–6–6:

> An employer may seek a temporary restraining order or injunction on behalf of an employee to prohibit further violence or threats of violence by a person if:
>
> (1) the employee has suffered unlawful violence or a credible threat of violence from the person; and
>
> (2) the unlawful violence has been carried out at the employee's place of work or the credible threat of violence can reasonably be construed to be carried out at the employee's place of work by the person.

The statute defines a "credible threat of violence" as "a knowing and willful statement or course of conduct that does not serve a legitimate purpose and that causes a reasonable person to fear for the person's safety." I.C. § 34–26–6–2. Additionally, "Course of conduct" is "a pattern of conduct composed of a series of acts over a period of time, however short, indicating a continuity of purpose, that includes . . . (2) entering the employee's place of work. . . ." I.C. § 34–26–6–1. Unlawful violence as used in the WVROA, "means battery . . . or stalking." I.C. § 34–26–6–5. Finally, harassment, as referred to in the WVROA, means

> Conduct directed towards a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress . . . but not statutorily or constitutionally protected activity such as law-

ful picketing pursuant to labor disputes or lawful employer-related activity pursuant to labor disputes.

Ind.Code § 35–45–10–2.

Although we have found no case construing the WVROA, cases decided under companion legislation—the Indiana Civil Protection Order Act[2] (CPOA)—provide a useful context for analyzing the legal parameters that are required to affirm an order that is issued in favor of a protected person. Pursuant to Indiana Code section 34–26–5–9(f), "[a] finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of the petitioner or a member of petitioner's household." In *Tons v. Bley*, 815 N.E.2d 508, 510–11 (Ind.Ct.App.2004), the evidence established that Travis Tons resided with his mother after she and Travis's father divorced. When Travis attended a rodeo against his father's wishes, the father called Travis's mother, threatening that he "would come over and beat Travis black and blue" if the mother took Travis to see counselors, tutors, or attorneys. *Id.* at 510. We affirmed the entry of a family violence protective order based upon evidence including (a) the father's recent threatening telephone call and (b) that the father previously struck Travis in November 2002 and on other occasions. *Id.* It was determined that the evidence warranted granting the order "necessary to bring about the cessation of the violence or the threat of violence." *Id.* at 510–11.

Similarly, in *Aiken v. Stanley*, 816 N.E.2d 427 (Ind.Ct.App.2004), we affirmed a CPOA order based upon a "credible threat to the safety of Petitioner," where a former boyfriend verbally harassed the petitioner, screamed expletives at her, and engaged in unwelcome physical contact, including trying to shake the petitioner's hand, pressing her against a bar, and pushing a car door against her arm. *Id.* at 428–29.

In affirming the protective order, we observed that there was some evidence of physical contact, and we rejected the boyfriend's assertion that a protective order was not appropriate because the evidence did not show that there was "actual physical violence." *Id.* at 431. In essence, we noted that the totality of the former boyfriend's actions placed the petitioner in "fear of physical harm," as required by Indiana law. *Id.* at 432.

▮ In this case, Torres asserts that the restraining order must be set aside because there was no evidence establishing that her actions would cause a reasonable person to suffer emotional distress "and that actually caused the victim to suffer emotional distress" within the meaning of the WVROA. Appellant's Br. p. 7. However, it was shown at the hearing that Madill, the ICOIL member who had witnessed Torres's verbal and physical outbursts on at least fifteen occasions, left the April 9, 2008, meeting because she no longer felt safe. Tr. p. 49–50, 55–56, 64. Madill saw Torres's actions escalate from yelling and standing, to pacing with clenched fists, to throwing or kicking a chair towards her. Additionally, ICOIL personnel have called Capitol Police on a number of occasions, including the meeting in question, to intervene when Torres's behavior became disruptive. *Id.* at 19, 39. In light of these circumstances, it was reasonable for the trial court to conclude that reasonable persons in attendance at ICOIL meetings

2. The CPOA was added pursuant to P.L. 133–2002, SEC. 56, *see* Ind.Code § 34–26–5–1 *et seq.* (2008), and the WVROA was enacted under Section 57 of the same law. I.C. § 34–26–6–1 *et seq.*

would have suffered—and, in fact, suffered—emotional distress due to Torres's outbursts.

Additionally, the uncontradicted evidence established that Baker actually suffered emotional distress as a result of Torres's conduct. That distress included Baker's inability to eat, stomach trouble before ICOIL meetings, feeling "drained" after ICOIL meetings, and a fear of unpredictable confrontations with Torres as she performed her job. *Id.* at 19–24. Moreover, Baker feared that Torres's "out of control" behavior might extend to her home or office where she would not be able to protect herself from Torres's physical acts. *Id.*

Although Torres asserts that there was no "credible threat of violence" because of her mere "protests" or "advocacy" on behalf of herself and others, Torres cites to no legal authority in support of that contention. Moreover, no one at ICOIL—including Baker—challenges Torres's right to attend ICOIL meetings, speak her mind, or disagree with ICOIL's actions. However, yelling, threatening, using profanity, throwing metal devices, knocking over chairs, or charging people, constitute behavior far beyond mere protestations or any type of advocacy contemplated in the workplace.

■ In our view, the purpose of the WVRA, CPOA, and the relevant criminal laws, is to prohibit actions and behavior that cross the lines of civility and safety in the workplace, at home, and in the community. As a result, we can only conclude that the FSSA proved that Torres engaged in unlawful credible threats of violence against Baker.

■ Finally, we reject Torres's contention that the evidence did not sufficiently establish that a reasonable person would "fear" her conduct. Appellant's Br. p. 7–8. As discussed above, Madill testified that she was afraid of Torres because of the events that occurred at the April 9, 2008, ICOIL meeting. Tr. p. 55–56. Moreover, that meeting was not the first time that Torres's actions necessitated police presence. Additionally, the course of conduct between Baker and Torres increased in intensity and severity until April 9, 2008—the date on which Baker finally determined that Torres's conduct caused her to be frightened, intimidated, and threatened. *Id.* at 15, 33, 42–43, 71–72, 110–11.

In light of these circumstances, and when viewing the evidence most favorable to the trial court's judgment, we conclude that the trial court properly entered the protective order against Torres pursuant to the provisions of the WVROA. In essence, Torres is merely requesting that we reweigh the evidence, which we will not do.

The judgment of the trial court is affirmed.

MAY, J., and BARNES, J., concur.