**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAUN WELIEVER**
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| HEATH LORD, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No.  32A04-1208-PO-422 |
| | ) | |
| ASHLEY LORD, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1204-PO-207

**March 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Heath Lord ("Heath") appeals the trial court's denial of his motion to correct error, which challenged the issuance of a protective order against him. He raises two issues for our review, which we revise and restate as the single issue of whether the trial court erred in denying his motion to correct error following its issuance of a protective order against him.

We reverse.

**Facts and Procedural History**

Heath and Ashley Lord ("Ashley") married in February of 1997, and they resided in North Carolina. They separated in June of 2003, and Heath remained in the marital residence. They divorced on November 1, 2004.

Between the separation and the divorce, several incidents occurred between Ashley and Heath. Heath followed Ashley to various locations, called her at work repeatedly, left multiple voicemails, called high school friends and family friends to inquire about her, and hacked into her computer to read her emails. While she was working as a paramedic in North Carolina, he called various paramedic stations to find her. At one point, she caught him searching through her car in a parking garage. In August of 2003 she noticed that her car was running strangely, and in October of 2003 she noticed sand in the oil fill tube and in the oil filter. The sand in her oil system rendered her car inoperable, and she had to purchase a new car. On September 8, 2003, when Ashley visited the marital residence, Heath grabbed her in a bear hug, and she had to fight to get away from him. In addition, she alleges that he threatened multiple times to kill their three cats if she did not return to him.

2

On October 27, 2003, Ashley filed a motion for a protective order, which a North Carolina trial court denied. Ashley reported Heath's continuing, repeated phone calls to the police; on December 30, 2003, he was convicted in North Carolina of phone harassment, a misdemeanor, and ordered to have no contact with her for one year.

During the approximately one-year period between Heath's misdemeanor conviction and the finalization of their divorce, Ashley moved to Indiana and attempted to "drop off the face of the earth." (Tr. at 20.) She asked utility companies not to share her contact information with Heath. She cancelled her landline phone service, changed cell phone companies, and switched from a North Carolina cell phone number to an Indiana cell phone number. She changed her email address three times, mostly avoided social media, and ended contact with most of the acquaintances she had shared with Heath.

In the meantime, Heath remained in North Carolina. He remarried on April 23, 2011, and he has one stepdaughter with his new wife. According to him, he has neither plans, nor reason to travel to Indiana. After his December 30, 2003 misdemeanor conviction, he and Ashley had no contact until April 19, 2012, when he sent her two text messages regarding Vivian, one of their cats, who had passed away that day. The first, sent at 6:05 p.m., stated: "I wanted to let you know that Vivian passed away today of congenital heart disease. She passed away very peacefully. We sat in the sun as she smelled flowers and watched the squirrels." (Petitioner's Ex. 2.) The second, sent at 7:03 p.m., stated: "Congestive Heart Failure." (Petitioner's Ex. 2.) Ashley felt threatened by the text messages, to the point where she felt she could not leave her home.

3

On April 20, 2012, the trial court granted Ashley an Ex-Parte Order for Protection ("the Protective Order"). On May 14, 2012, Heath filed a request for a hearing, which the Court granted and set for June 8, 2012. At the June 8, 2012 hearing, which Heath attended telephonically, the trial court granted Ashley's oral motion to amend the Protective Order to include allegations that she was a victim of stalking. The same day, the trial court entered an Order upholding the Protective Order. On July 3, 2012, Heath filed a motion to correct error, which the trial court denied on July 24, 2012. This appeal ensued.

**Discussion and Decision**

We initially observe that Ashley failed to file an appellee's brief. Under such a circumstance, we do not undertake to develop an argument on her behalf, and we may reverse upon Heath's prima facie showing of reversible error. See Carter v. Grace Whitney Props., 939 N.E.2d 630, 633 (Ind. Ct. App. 2010). In this context, prima facie error means "at first sight, on first appearance, or on the face [of] it." Id. at 633-34 (internal quotation marks omitted). This standard prevents two evils that otherwise would undermine the judicial process. Pala v. Loubser, 943 N.E.2d 400, 407 (Ind. Ct. App. 2011), trans. denied. By requiring the appellant to show some error, we ensure that the court, not the parties, decides the law. Id. By allowing the appellant to prevail upon a showing simply of prima facie error, we avoid the improper burden of having to act as advocate for the absent appellee. Id.

We generally review the denial of a motion to correct error for an abuse of discretion. Kornelik v. Mittal Steel USA, Inc., 952 N.E.2d 320, 324 (Ind. Ct. App. 2011), trans. denied.

4

An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Hawkins v. Cannon, 826 N.E.2d 658, 661 (Ind. Ct. App. 2005), trans. denied.

A person who is or who has been a victim of domestic or family violence may file a petition for a protective order against a:

> (1) family or household member who commits an act of domestic or family violence; or
> (2) person who has committed stalking under IC 35-45-10-5[.]

Ind. Code § 34-26-5-2(a). To obtain a protective order, the petitioner must establish by a preponderance of the evidence at least one of the allegations in the petition. A.S. v. T.H., 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). Heath contends there was insufficient evidence to support the trial court's issuance of the Protective Order against him because: (1) no evidence was presented establishing domestic or family violence; and (2) no evidence was presented establishing stalking.

When considering the sufficiency of the evidence supporting a decision to issue or modify a protective order, we neither reweigh the evidence nor judge the credibility of witnesses. See id. We look only to the evidence of probative value and reasonable inferences drawn therefrom that support the trial court's judgment. Id.

Protective orders are in the nature of injunctions. See I.C. § 34-26-5-9(b) (authorizing the trial court to enjoin or prohibit action on the part of the respondent); see also Black's Law Dictionary 788 (7th ed. 1999) (defining "injunction" as "[a] court order commanding or preventing an action[]"); Black's 1239 (referring to "restraining order" for the definition of

"protection order"); Black's 1315 (defining "restraining order" as "[a] court order prohibiting or restricting a person from harassing, threatening, and sometimes even contacting or approaching another specified person[]"). Therefore, in granting a protective order the trial court must sua sponte make special findings of fact and conclusions thereon. See Ind. Trial Rule 52(A); I.C. §§ 34-26-5-9(a), (f); Tisdial v. Young, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010) (stating that the trial court may issue or modify an order for protection only upon a finding that domestic or family violence has occurred). Here, the trial court failed to enter findings of fact or conclusions thereon. Because Heath does not address this matter on appeal, and because we favor addressing the merits of cases before us, Thacker v. Wentzel, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003), we turn to the record to review whether there was sufficient evidence to support the issuance of a protective order.

*Evidence of Domestic Violence*

"A finding that domestic or family violence has occurred sufficient to justify the issuance of [a protective order] . . . means that a respondent represents a credible threat to the safety of a petitioner or a member of a petitioner's household." I.C. § 34-26-5-9(f). "Domestic or family violence" is defined in relevant part as:

> the occurrence of at least one (1) of the following acts committed by a family or household member:
>
> > (1) Attempting to cause, threatening to cause, or causing physical harm to another family or household member[;]
> >
> > (2) Placing a family or household member in fear of physical harm[; or]
> >
> > . . .

6

(4) Beating . . . , torturing . . . , mutilating . . . , or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

I.C. § 34-6-2-34.5. A trial court may not deny a petition for a protective order solely because of a lapse of time between an act of violence and the filing of the petition. I.C. § 34-26-5-13. However, we may consider remoteness in determining whether a sufficient threat exists to warrant the issuance of a protective order. Tons v. Bley, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004). For example, in Tons, another panel of this court concluded that "unspecified acts of violence occurring eight years previously are not a sufficient basis for the issuance of a protective order." Id.

Here, no evidence was presented to the trial court that would permit an inference that Heath represents a credible threat to the safety of Ashley or a member of her household. The evidence indicates only that any physical contact between Heath and Ashley last occurred in North Carolina, in late 2003, and that Heath lives in North Carolina and has neither plans nor reason to travel to Indiana. Furthermore, no evidence was presented to the trial court that would indicate that Heath beat, tortured, mutilated, or killed their cat, Vivian. As such, there was insufficient evidence of domestic violence to support the issuance of a protective order.

*Evidence of Stalking*

To evaluate whether a person committed stalking under Indiana Code section 35-45-10-5, we turn to Indiana Code section 35-45-10-1, which defines stalking as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or

7

threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." For the purposes of stalking, harassment is "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2. Stalking requires proof that the perpetrator entertained the intent to cause the other person to feel terrorized, frightened, intimidated, or threatened. Burton v. State, 665 N.E.2d 924, 927 (Ind. Ct. App. 1996). Stalking further involves a knowing or an intentional course of conduct of repeated or continuing harassment of another person. Johnson v. State, 648 N.E.2d 666, 670 (Ind. Ct. App. 1995). Such conduct must not only cause the victim to feel terrorized, frightened, intimidated, or threatened, but must also be such that would cause a reasonable person to feel so. I.C. § 35-45-10-1; Johnson, 648 N.E.2d at 670.

Here, we acknowledge that the two text messages in question actually made Ashley feel terrorized, frightened, intimidated, or threatened. The two text messages are sufficient to constitute a repeated or continuing course of conduct. See, e.g., Mysliwy v. Mysliwy, 953 N.E.2d 1072, 1077 (Ind. Ct. App. 2011), trans. denied (the term "repeated" in Indiana's anti-stalking laws means more than once); Johnson v. State, 721 N.E.2d 327, 333 (Ind. Ct. App. 1999), trans. denied (evidence that, on three separate occasions over the course of a five-hour period on the same night, defendant had banged on victim's door and window, requested to be let in, and berated victim, was sufficient to establish that defendant had engaged in "repeated" acts of harassing conduct under Indiana's anti-stalking laws). However, no

evidence was presented to the trial court that would permit an inference that Heath intended to cause Ashley to feel terrorized, frightened, intimidated, or threatened by sending the two text messages. The only evidence presented at trial regarding Heath's intent in sending the text messages indicates that he wished to notify Ashley of the death of a pet cat, formerly beloved by both Heath and Ashley.

Furthermore, no evidence was presented to the trial court that would permit an inference that a reasonable person would feel terrorized, frightened, intimidated, or threatened by receipt of the two text messages. The evidence presented at trial indicates only that, after 8½ years of no contact, Heath sent Ashley two text messages in the early evening within a period of one hour. The text messages contain nothing a reasonable person would consider ominous or intimidating. The first text message apprises the reader that someone or something named Vivian passed away of congenital heart disease. The second text message appears to correct the cause of death stated in the first text message to "Congestive Heart Failure." (Petitioner's Ex. 2.) As such, there was insufficient evidence of stalking to support the issuance of a protective order.

## Conclusion

There was insufficient evidence of either domestic or family violence, or stalking to support the issuance of a protective order. The trial court therefore abused its discretion when it denied Heath's motion to correct error.

Reversed.

NAJAM, J., and BROWN, J., concur.

9