Susan ESSANY, Appellant–Petitioner,

v.

Tim W. BOWER, Appellee–Respondent.

No. 64A03–0301–CV–25.

Court of Appeals of Indiana.

June 19, 2003.

Patrick B. McEuen, Singleton, Crist, Austgen & Sears, Munster, IN, Attorney for Appellant.

Cynthia Salinas McClure, Chesterton, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Susan Essany appeals the trial court's dismissal of her Petition for an Order for Protection and Request for a Hearing and presents the following issues for review:

1. Whether the trial court provided Essany with an adequate hearing on her petition for a protection order.

2. Whether the trial court erred when it dismissed Essany's petition for a protection order.

We reverse and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On September 16, 2002, Essany filed a petition seeking a protection order against Tim W. Bower, alleging that Bower had stalked her. Specifically, Essany alleged, in relevant part, that on September 6, 2002, Bower threatened to kill her "in excess of ten (10) times" on occasions when she was standing at her son's bus stop. She further claimed that in the summer of 2001, Bower "attempted to swerve into [Essany's] automobile while both his car and [hers] were traveling toward one another on County Road 100 East in Chesterton." Essany further alleged:

Petitioner and Respondent both reside on County Road 100 East in Chesterton. It is a Cul-de-sac, with Petitioner's house at the south end of the street. Respondent has no reason to travel to petitioner's end of the block. Respondent's house is north of Petitioner's, closer to the only exit from the street. However, over the last seven years, Respondent has repeatedly ridden his four wheel [all terrain vehicle] down the street (and over petitioner's property before a fence was erected). Respondent taunts petitioner, honks his horn, calls out rude and lewd names, and otherwise interferes with her peaceful enjoyment of her home.

The same day Essany filed her petition, the trial court issued a temporary protection order ex parte against Bower[1] and scheduled a hearing on Essany's request

---

1. *See* Ind.Code § 34–26–5–9(a)(1) (allowing court to issue protection order without notice or hearing under certain circumstances).

for a permanent protection order for November 2002.[2] Bower sought a continuance, and the court rescheduled the hearing for December 13, 2002.

On the date of the hearing, Essany and Bower appeared with counsel. After the parties and counsel introduced themselves to the court, Essany's counsel requested that he be allowed to call Essany to the stand. In response, the court asked counsel to explain the case, and counsel complied. Following Essany's counsel's recitation of facts alleged in support of the petition, the court asked both Essany and Bower to stand and administered an oath. Thereafter, the following short colloquy transpired:

> THE COURT: Please be seated. Ms. Essany, you just heard what your counsel said and I've read your petition. Are the facts that are set forth in your petition true and correct?
>
> MS. ESSANY: Yes.
>
> THE COURT: Is what your counsel just said true and correct?
>
> MS. ESSANY: Yes.
>
> THE COURT: Okay. Mr. Bower, did you hear all that?

The court then allowed Bower to respond in his own words to the allegations in the petition and provide his version of events. Next, the court issued its ruling from the bench, explaining in relevant part:

> I don't think that you have made out a case for stalking yet. As you understand, the statute on the [protection] order has been rewritten this year. It's much more restrictive as to what it will allow. In this case, I don't find that there's any meeting of the requirements for that statute. I'm going to dismiss your petition for a [protection] order. I'm going to tell you, though, if you're having some problems with this person trespassing on your property, making threats of death, in any way interfering with your ability to use and enjoy your own property, then you should go to the police and have a police report prepared, take it to the prosecutor and have criminal charges taken out against this person. Okay? That's where you should be taking care of this—not in the protection order statute case. All right?

Essany's counsel then asked the court to clarify its ruling, namely, inquiring whether the court found Essany to be less credible than Bower, and the court responded:

> I don't think I need to make those findings. I think you did not meet the requirements of the statute. I'm going to show your case dismissed. . . .

This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Adequacy of Hearing

Essany first asserts that she was denied a fair hearing on her petition for a protec-

---

**2.** In the Statement of the Case section of her brief, Essany asserts that although the trial court granted her petition for a temporary protection order, it "expressed [ ] concern that the allegations of death threats and general mischief by Bower did not warrant the entry of a permanent protective order." But Essany did not provide a citation to the record, and our review of the record as a whole revealed no statements by the trial court regarding its entry of the temporary protection order. Indeed, the only evidence we found regarding the court's entry of a temporary protection order was in the Chronological Case Summary ("CCS"). It is possible that the court made an oral statement explaining its entry of a temporary protection order in open court, which was not reflected in the CCS entry. In that case, Essany should have submitted a statement of evidence pursuant to Indiana Appellate Rule 31. We remind Essany that it is her responsibility to provide this court with a complete record on appeal, along with proper citations to that record. *See* Ind. App. R. 22(C); Ind.App. R. 46(A)(5).

tion order. In particular, she complains that the trial court did not allow her to testify about the allegations of her petition or cross-examine Bower. She requests that we clarify the meaning of the term "hearing" under the Civil Protection Order Act ("CPOA"), Indiana Code Section 34–26–5–1 *et seq.* This presents an issue of first impression.

■ As an initial matter, Essany does not assert that the hearing in this case violated her constitutional due process rights. Indeed, she does not claim that by filing a petition for a protection order under CPOA, she has a protected property interest which implicates the procedural due process guarantees of the Fourteenth Amendment to the United States Constitution. *Cf. Austin v. Vanderburgh County Sheriff Merit Comm'n,* 761 N.E.2d 875 (Ind.Ct.App.2002) (discussing whether law enforcement officer had constitutionally protected property interest in being placed on sergeant's promotional list). It is well settled that the "requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Id.* at 879 (citing *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)).

■ Instead, Essany asserts that when the trial court denied her an opportunity to present testimony and cross-examine Bower, it denied her a "hearing," based on the plain and ordinary meaning of that term. She further contends that the legislature intended that petitioners under CPOA be allowed to present testimony and cross-examine witnesses for the respondent. We must agree.

■ "Our legislature has dictated that CPOA shall be construed to promote the:

(1) protection and safety of all victims of domestic or family violence in a fair, prompt and effective manner; and (2) prevention of future domestic and family violence." *Parkhurst v. Van Winkle,* 786 N.E.2d 1159, 1160 (Ind.Ct.App.2003) (citing Ind.Code § 34–26–5–1). And where, as here, the trial court issues a protection order ex parte, provides relief under section 9(b),[3] and a party requests a hearing, the court shall set a date for a hearing on the petition. *See* Ind.Code § 34–26–5–10(a)(1). "The hearing must be held not more than thirty (30) days after the request for a hearing is filed unless continued by the court for good cause shown." *Id.* However, the legislature did not define the term "hearing" as it appears in CPOA.

The cardinal rule of statutory construction is to determine and give effect to the true intent of the legislature. *Risner v. Indiana Parole Bd.,* 779 N.E.2d 49, 51–52 (Ind.Ct.App.2002). To do this, we endeavor to give statutory words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Gary/Chicago Airport Bd. of Authority v. Maclin,* 772 N.E.2d 463, 471 (Ind.Ct.App.2002). Where the General Assembly has defined a word, this court is bound by that definition, even if it conflicts with the common meaning of the word. *Id.* Where the legislature has used a word without definition, however, this court must examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, unless doing so would deprive the statute of its purpose or effect. *Id.* Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Dierckman v.*

---

3. Indiana Code Section 34–26–5–9(b) sets forth the types of relief a court may grant

without notice and a hearing in an ex parte protection order.

*Area Planning Comm'n,* 752 N.E.2d 99, 103 (Ind.Ct.App.2001), *trans. denied.*

This court has previously defined a hearing as "a proceeding of relative formality held in order to determine issues of fact or law in which evidence is presented and witnesses are heard." *Hunt v. Shettle,* 452 N.E.2d 1045, 1050 (Ind.Ct.App.1983). A common dictionary definition of "hearing" provides:

> 3. An opportunity to be heard. 4. *Law.* a. A preliminary examination of an accused person. b. The trial in an equity case. 5. A session, as of an investigatory committee or a grand jury, *at which testimony is taken from witnesses.*

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 833 (3d ed. 1992) (emphasis added). In addition, Essany points out that Black's Law Dictionary has defined "hearing" as "[a] proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of law or fact to be tried, in which witnesses are heard and evidence presented." Appellant's Brief at 5; *see also* BLACK'S LAW DICTIONARY 497 (6th ed. 1991).

Black's most recent edition, however, defines "hearing" as "[a] judicial session, [usually] open to the public, held for the purpose of deciding issues of fact or law, *sometimes* with witnesses testifying." BLACK'S LAW DICTIONARY 725 (7th ed. 1999) (emphasis added). This definition differs from the definition found in Black's 6th edition. By defining the term as a proceeding during which witnesses sometimes testify, Black's 7th edition's definition recognizes that a hearing does not always contemplate the presentation of evidence or witness testimony. For example, when a party files a motion for summary judgment and the court conducts a hearing under Indiana Trial Rule 56(C), it is common for counsel to present argument without presenting witnesses. Thus, we are confronted with somewhat different common meanings of the undefined term.

But the question presented here is what the legislature intended when it provided for a hearing under CPOA. Again, we must be mindful that our foremost objective is to determine and effect legislative intent. *See General Motors Corp. v. Review Bd. of Ind. Dept. of Workforce Dev.,* 671 N.E.2d 493, 497 (Ind.Ct.App.1996). To that end, courts must consider the goals of the statute and the reasons and policy underlying the statute's enactment. *Id.*

As we have stated, the first section of CPOA provides that the chapter "shall be construed to promote the protection and safety of all victims of domestic or family violence in a fair, prompt and effective manner." I.C. § 34–26–5–1. A hearing in which the petitioner may present testimony, call witnesses on his or her behalf, and cross-examine any witnesses called by the respondent furthers the express goal of CPOA to provide protection to victims of domestic or family violence in a fair and effective manner.

Moreover, Indiana Code Section 34–26–5–16, which addresses fees and costs associated with protection orders, provides that fees for filing, service of process, *witnesses,* or subpoenas may not be charged for a proceeding seeking relief from or enforcement of a protection order. (Emphasis added). By addressing the fees and costs associated with witnesses, that section further supports the conclusion that when the legislature provided for hearings under CPOA, it intended that the petitioner, and the respondent if present, be permitted to call witnesses at those hearings.[4]

---

4. A court may issue a protection order, following notice and a hearing, whether or not

Here, Essany's counsel stated at the beginning of the hearing that he wanted to call Essany to the stand. But the trial court thwarted his efforts and, instead, asked counsel to explain what the case was "all about first." At that point, counsel explained the allegations of Essany's petition. Next, the court directed both Essany and Bower to stand and administered the oath. The court then asked Essany two questions, verifying that the statements of her counsel and the facts alleged in her petition were true. Once Essany confirmed that the statements were true, the court allowed Bower to give his response, under oath, to the allegations in the petition. The court then dismissed Essany's petition.

We conclude that the hearing in this case did not comport with the type of hearing intended by our legislature. The court did not allow Essany to testify. Moreover, the court allowed Bower to testify and did not allow Essany to cross-examine him before the court dismissed her petition.

Moreover, Essany alleged that Bower had stalked her. And as Essany points out, the offense of stalking involves a subjective component. "Stalking" is defined in relevant part as "a knowing or intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and *that actually causes the victim to feel terrorized, frightened, intimidated, or threatened.*" Ind.Code § 35–45–10–1 (emphasis added). Thus, where, as here, the petitioner alleges that she has been the victim of stalking, it is necessary

for her to show that the respondent's actions have actually caused her to feel terrorized, frightened, intimidated, or threatened. *See Johnson v. State,* 721 N.E.2d 327, 331 (Ind.Ct.App.1999) (discussing elements to prove stalking in criminal prosecution), *trans. denied.* Essany was not given an opportunity to make that showing.

We conclude that the hearing in this case was inadequate under the circumstances. The court erred when it did not allow Essany to testify or cross-examine Bower before it dismissed Essany's petition. We therefore reverse and remand to the trial court for a new hearing.

### Issue Two: Dismissal of Essany's Petition

Essany also claims that the trial court erred when it found that she had not met the statutory requirements to receive a permanent protection order under Indiana Code Section 34–26–5–2.[5] Specifically, she directs us to the court's statement that the current protection order statute "is much more restrictive as to what it will allow," and asserts that the trial court erroneously dismissed her petition because she is only a neighbor of Bower. Bower responds that the court properly dismissed her petition because she is not a "victim of domestic or family violence" as required under the protection order statute. Because this dispute involves Essany's standing to seek a protection order, it is likely to recur on remand. Therefore, we address the parties' arguments in turn.

Indiana Code Section 34–26–5–2 establishes who may seek a protection order and provides in relevant part:

the respondent appears. I.C. § 34–26–5–9(a)(2), (c).

**5.** An order for protection issued ex parte or upon notice and a hearing is effective for two

years after the date of issuance *unless another date is ordered.* I.C. § 34–26–5–9(e) (emphasis added).

(a) A person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a:

(1) family or household member who commits an act of domestic or family violence; or

(2) person who has committed stalking under IC 35–45–10–5 or a sex offense under IC 35–42–4 against the petitioner.

Recently, this court explained that, for purposes of the CPOA, "domestic and family violence" includes stalking. *Parkhurst,* 786 N.E.2d at 1161. Moreover, we held that "[t]here is no requirement that the alleged stalking be committed by a family or household member," as those terms are defined by Indiana Code Section 34–6–2–44.8.[6] *Id.* Therefore, a person who alleges that she is a victim of stalking, even where the alleged stalker is a stranger to the victim, may seek a protection order against the alleged stalker under Indiana Code Section 34–26–5–2(a)(2). *Id.* at 1162.

Here, the trial court did not explain its conclusion that Essany had failed to meet the requirements of the protection order statute. However, both parties interpret the court's ruling to mean that Essany did not meet the statutory requirements to obtain a protection order because she and Bower are strangers, that is, not family or household members under Indiana Code Section 34–6–2–44.8. If, in fact, the court dismissed Essany's petition on those grounds, that would be error as a matter of law. *See id.*

The court, however, may have determined that based on the scant testimony presented at the hearing, Essany did not prove the allegations contained in her petition.[7] Because we have determined that Essany's hearing was inadequate under the circumstances, and remand for a new hearing, we need not address whether Essany met her burden of proving the allegations in her petition by a preponderance of the evidence. Rather, Essany will now have an opportunity to present evidence in a hearing before the trial court. *See* Issue One, *supra.*

In conclusion, we reverse and remand with instructions to the trial court to conduct a new hearing on Essany's petition, during which time the court must determine whether Essany has proven the alle-

---

6. "Family or household member" is defined as:

(1) a person who is a current or former spouse;
(2) a person who is dating or has dated;
(3) a person who is engaged or was engaged in a sexual relationship;
(4) a person who is related by blood or adoption;
(5) a person who is related or was related by marriage;
(6) a person who has an established legal relationship or previously established a legal relationship;
(A) as a guardian;
(B) as a ward;
(C) as a custodian;
(D) as a foster parent;
(E) in a capacity similar to those listed in clauses (A) through (D);
(7) a person who has a child in common, and
(8) a minor child of a person in a relationship described in subdivisions (1) through (7).
Ind.Code § 34–6–2–44.8.

7. Essany also asserts that the CPOA fails to set forth the applicable burden of proof where a petitioner seeks a protection order against a person as a result of alleged stalking. To the contrary, Indiana Code Section 34–26–5–9(f) states, in relevant part, that "[u]pon a showing of domestic or family violence *by a preponderance of the evidence,* the court shall grant relief necessary to bring about a cessation of the violence or the threat of violence." (Emphasis added). Thus, the statute unambiguously provides that a petitioner must prove the allegations in her petition by a preponderance of the evidence.

gations in her petition by a preponderance of the evidence.

Reversed and remanded.

BROOK, C.J., and BAILEY, J., concur.