Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Aug 21 2012, 9:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MICHAEL RILEY**
Rensselaer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRANDON E. KLEIN, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1112-PO-1157 |
| | ) | |
| K.J., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Les A. Meade, Judge
Cause No. 79D05-1009-PO-402

**August 21, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Brandon E. Klein appeals the trial court's issuance of a protective order against him. Klein contends that the trial court failed to comply with the requirements of Indiana's Civil Protection Order Act ("CPOA"). Klein also argues that the court was biased and the evidence was insufficient to support the issuance of the protective order. We conclude that the trial court provided Klein with a hearing that was both timely and appropriate pursuant to the CPOA. We also conclude that the court was not biased, and the evidence was sufficient to support the issuance of the protective order against Klein. We affirm.

## Facts and Procedural History

Klein and K.J., a student at Purdue University in West Lafayette, dated for a brief period in 2010. After K.J. ended the relationship, Klein continued to contact K.J. by telephone and come to her apartment unannounced. K.J. asked Klein to stop contacting her and stopped answering his phone calls. Klein persisted, calling K.J. from different phone numbers in an attempt to get her to answer his calls. On one occasion in August 2010, when Klein reached K.J., Klein spoke to her in a threatening manner, telling her to "try him," and said, "if that's how you want to play it[,] don't think I can't f*** with your life, too." Tr. p. 5, 52. K.J. filed a police report.

In September, K.J. found her apartment door kicked in and discovered her mailbox had been tampered with. *Id.* at 6, 47, 53-54. K.J. filed another police report. Klein also called K.J.'s parents to inform them that he had attempted to send a letter to K.J. but it had been returned to him. *Id.* at 47, 53, 114. On September 17, K.J. sought a protective

order against Klein. At approximately 2:00 a.m. on September 21, a large rock was thrown into K.J.'s apartment window in Lafayette. This woke K.J., who discovered that the power was out in her apartment. K.J. contacted authorities, who arrived at the scene and restored the power. Only K.J.'s apartment had lost power. Klein, who at that time was living in Indianapolis, was pulled over and arrested in K.J.'s neighborhood just after 2:00 a.m. *Id.* at 66-68.

The next day, K.J. and her parents appeared for an ex parte hearing on her request for a protective order. K.J. testified about the events of August and September and her fear of Klein. K.J.'s parents also testified to their dealings with Klein. At the end of the hearing, the trial court remarked to K.J., "Just one thing that you've probably also heard from your parents, choose more wisely . . . there are a lot of guys out there and not all of them are jerks, so . . ." *Id.* at 14. The court issued the order for protection against Klein.

On November 4, Klein requested a hearing on the order for protection. Appellant's App. p. 6 (CCS). The trial court granted his request and set a hearing for November 23. After numerous continuances, the trial court held a hearing on discovery matters. Counsel for K.J. sought to quash Klein's discovery requests for K.J.'s phone records from 2008 to present. Counsel also argued that Klein's interrogatories were overbroad and objected to Klein's request that K.J. undergo a psychiatric evaluation.

Klein admitted that his interrogatories requested information that was either not discoverable, Supp. Tr. p. 10, did not exist, *id.* at 13, was available to him through third-party discovery, *id.* at 17, or had already been provided to him, *id.* at 6, 21. He argued, however, that the phone records were relevant to the issue of when the relationship began

3

and to K.J.'s credibility. He also argued that K.J. should be required to undergo a mental evaluation because she suffered from Lupus and took medication. Tr. p. 38-39. The trial court found Klein's discovery requests inappropriate and expressed impatience with Klein, saying:

> "This is an oppressive request for discovery. I'm not going to do this. I would like to know why you think it is[,] Mr. Klein[,] that you think you're entitled through this process to just put [K.J.] through more and more – more and more abuse."

*Id.* at 39.

The contested hearing on the protective order was ultimately held in November 2011. Appellant's App. p. 2 (CCS). The trial court began the hearing by "establish[ing] what is in dispute and what is not" through a series of questions posed to Klein and K.J. *Id.* at 46. After explaining, "We're going to give everyone an opportunity to put on whatever evidence you want," the court asked Klein's counsel to proceed. *Id.* at 77. Counsel presented evidence and called witnesses but did not call K.J. When Klein took the stand, he denied breaking down K.J.'s door or tampering with her mailbox. He admitted that he had gone to K.J.'s apartment to deliver a letter at 2:00 a.m. on September 21, but he denied throwing the rock or shutting off her power. *Id.* at 67, 122.

At the conclusion of the contested hearing, the trial court addressed Klein, telling him that his version of the events "was unbelievable . . . ." *Id.* at 184. The court ruled that the protective order would remain in effect pursuant to Indiana Code section 34-26-5-9(b), enjoining Klein from threatening to commit or committing acts of domestic or family violence, stalking, or a sex offense against K.J. and prohibiting Klein from

4

harassing, annoying, telephoning, contacting, or directly or indirectly communicating with K.J.

Klein now appeals.

## Discussion and Decision

At the outset, we note that K.J. did not file an appellee's brief. Under that circumstance, we do not undertake to develop the appellee's arguments. *Branham v. Varble*, 952 N.E.2d 744, 746 (Ind. 2011). Rather, we will reverse upon an appellant's prima facie showing of reversible error. *Id.*

On appeal, Klein argues: (1) the court failed to comply with the requirements of the CPOA, specifically Indiana Code section 34-26-5-10; (2) the trial court was biased; and (3) the evidence was insufficient to support the issuance of a protective order against him.[1]

## I. Indiana Code Section 34-26-5-10

Klein's contends that the trial court failed to comply with the requirements of the CPOA, specifically Indiana Code section 34-26-5-10. Klein argues that the trial court denied him a timely hearing and denied him opportunity to cross-examine K.J., thus depriving him of a "hearing" as contemplated by the CPOA.

---

[1] Klein also argues that the trial court deprived him of due process under federal and state law by failing to allow him to cross-examine K.J. or "receive[] any meaningful discovery." Appellant's Br. p. 17, 21. It is well settled, however, that the requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Essany v. Bower*, 790 N.E.2d 148 (Ind. Ct. App. 2003). We do not find persuasive Klein's arguments that his attractiveness to medical schools—notably, he had already been accepted into one school—or his incarceration, which although related to the protective order, resulted from his own conduct, are proper bases for the due-process analysis. For this reason, we do not address this argument.

5

Indiana Code section 34-26-5-1, which governs the construction of the CPOA, provides that the CPOA "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." In addition, Indiana Code section 34-26-5-10(a)(1) provides, in relevant part, that where, as here, the trial court issues a protection order ex parte, provides relief under section 9(b), and a party requests a hearing, the court shall set a date for a hearing on the petition. Such hearing must be held not more than thirty days after the request for a hearing is filed, unless continued by the court for good cause. Ind. Code § 34-26-5-10(a)(1).

According to the language of Section 34-26-5-10(a)(1), Klein's argument that the hearing was not timely fails. The CCS reflects that Klein requested a hearing on November 4, 2010. The trial court granted his request and set a hearing for November 23, 2010. *See* Appellant's App. p. 6. This is within the thirty-day requirement set forth in Section 34-26-5-10(a)(1). Moreover, the CCS reflects the parties' agreement to continue the date of that hearing numerous times, *id.* at 5-6, which is also expressly contemplated and permitted under Section 34-26-5-10(a)(1).

Klein next argues that he was denied a "hearing" as contemplated by the CPOA because he was not permitted to cross-examine K.J. Although the legislature did not define the term "hearing," as it is used in the CPOA, Klein directs our attention to *Essany v. Bower* to resolve this issue. 790 N.E.2d 148 (Ind. Ct. App. 2003). In *Essany*, another panel of this Court held that a "hearing" as contemplated by the CPOA included the right to present testimony and call and cross-examine witnesses. *Id*. at 152. The Court

6

concluded that the petitioner, Essany, was denied her right to a hearing under the CPOA when she was not permitted to testify about the allegations in her petition or cross-examine the person against whom she sought the protective order, Bower. Klein argues that the facts of this case are like those of *Essany*, and for that reason, he was denied a hearing as contemplated by the CPOA.

> We find *Essany* distinguishable from this case. In *Essany*, counsel
>
> stated at the beginning of the hearing that he wanted to call Essany to the stand. But the trial court thwarted his efforts and, instead, asked counsel to explain what the case was "all about first." At that point, counsel explained the allegations of Essany's petition, next, the court directed both Essany and Bower [the respondent] to stand and administered the oath. The court then asked Essany two questions, verifying that the statements of her counsel and the facts alleged in her petition were true. Once Essany confirmed that the statements were true, the court allowed Bower to give his response, under oath, to the allegations in the petition. The court then dismissed Essany's petition.

*Id.* at 153. While the trial courts in *Essany* and this case both began by attempting to identify the basic facts, what happened next is different. Essany was not permitted to testify or cross-examine Bower. Here, however, Klein was permitted to testify at length. Further, as Klein admits, *see* Appellant's Br. p. 25, it appears that trial counsel opted to proceed by presenting his case rather than cross-examining K.J. And nothing occurred at the hearing that prevented Klein from cross-examining K.J. Klein was not deprived of a hearing as provided by the CPOA.

## II. Bias

Klein next contends that the trial court was biased. A trial before an impartial judge is an essential element of due process. *Stellwag v. State*, 854 N.E.2d 64, 65 (Ind. Ct. App. 2006). The law presumes that a judge is unbiased and unprejudiced. *Smith v.*

7

*State*, 770 N.E.2d 818, 823 (Ind. 2002). This presumption, though, may be rebutted if the defendant can establish from the judge's conduct an actual bias or prejudice that places the defendant in jeopardy. *Id.* Such bias and prejudice exists only where there is an undisputed claim or where the judge expressed an opinion regarding the controversy over which the judge was presiding. *Id.* An adverse ruling by itself is insufficient to show bias or prejudice. *Flowers v. State*, 738 N.E.2d 1051, 1060 n.4 (Ind. 2000), *reh'g denied.* The trial court has a duty to remain impartial and refrain from unnecessary remarks. *Massey v. State*, 803 N.E.2d 1133, 1139 (Ind. Ct. App. 2004). Nonetheless, it also has a duty to conduct the trial in a manner calculated to promote the ascertainment of truth, fairness, and economy of time. *Id.*

Klein's argument that the trial court was biased is premised on statements made by the court at the conclusion of the ex parte and contested hearings, as well as at the hearing on discovery matters. Having reviewed the record, we cannot agree. The court's comment to K.J. at the conclusion of the ex parte hearing to "choose more wisely" did not reference Klein specifically or indicate that the trial court had reached a conclusion about the merits of K.J.'s petition. The trial court's comments regarding Klein's discovery requests similarly do not establish bias; they were remarks on the invasive nature of Klein's discovery requests. Nor does the trial court's statement at the close of the contested hearing about the believability of Klein's story indicate bias as Klein contends, but rather the trial court's view of the evidence presented. In this case, the trial court viewed the evidence unfavorably to Klein and ruled against him. This fact is not

8

sufficient to establish bias. *Flowers*, 738 N.E.2d at 1060. Klein has failed to establish that the trial court was biased.

### III. Sufficiency of Evidence

Finally, Klein challenges the sufficiency of the evidence to support the issuance of the protective order against him. The party seeking a protective order must prove at least one of the allegations of her petition by a preponderance of the evidence. Ind. Code § 34-26-5-9; *Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004). In reviewing the sufficiency of the evidence supporting a protective order, we will neither reweigh the evidence nor reassess witness credibility. *Tons*, 815 N.E.2d at 511. We will examine only the probative evidence and reasonable inferences that support the trial court's judgment. *Id.* "A finding that domestic or family violence has occurred sufficient to justify the issuance of an order under this section means that a respondent represents a credible threat to the safety of a petitioner . . . ." Ind. Code § 34-26-5-9(f).

The evidence most favorable to the trial court's judgment shows that after ending her relationship with Klein, K.J. asked him to stop contacting her. Nonetheless, he continued to call her from unknown phone numbers. In one phone call, he threatened to "F*** up her life . . . ." Tr. p. 52. Klein also contacted K.J.'s parents and sent them a letter in the mail. In the months following their breakup, K.J.'s apartment door was kicked in and her mailbox was tampered with. Klein also attempted to send a letter to K.J. by mail, but he claimed it was returned to him. Klein later traveled from Indianapolis to Lafayette at 2:00 a.m. to personally deliver this letter to K.J. At precisely

9

the same time, a rock was thrown into K.J.'s apartment window and her power was shut off. Police arrested Klein just a short distance from K.J.'s apartment just after 2:00 a.m.

At the conclusion of the contested hearing, the trial court made a credibility determination, concluding that Klein's version of these events was simply "unbelievable." *Id.* at 184. Klein's summary of the testimony given at the contested hearing—particularly his implication that someone other than him could have committed the acts described—amounts to nothing more than an invitation to reweigh the evidence and reassess the parties' credibility, which we will not do. We conclude that the trial court did not err in finding that Klein represents a credible threat to K.J.'s safety and therefore properly issued the protective order against Klein.

Affirmed.

MATHIAS, J., and BARNES, J., concur.