Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Mar 13 2013, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ROBERT L. MEINZER, JR.**
Meinzer & Babineaux, LLC
St. John, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BENJAMIN MENTINK, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1207-PO-332 |
| | ) | |
| KAREN DOWNING, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Kavadias Schneider, Judge
Cause No. 45D01-1206-PO-63

**March 13, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Karen Downing ("Downing") was granted a protection order against Benjamin Mentink ("Mentink") by the Lake Superior Court. Mentink appeals the court's issuance of the protection order and raises three issues, which we consolidate and restate as: whether Downing presented sufficient evidence to support the issuance of the protection order under the Indiana Civil Protection Order Act.

We affirm.

**Facts and Procedural History**

Downing and Mentink are residents of the same condominium building in Schererville, Indiana, and Mentink's and Downing's assigned parking spaces are relatively close to one other. Mentink displays gun catalogs and political material in the windshield of his car and on bumper stickers. Much of the political material displayed contains racist and/or anti-Semitic statements or images. For example, the material at issue contains statements describing the Holocaust as a hoax and Jews as Satan worshipers. Tr. p. 19. Mentink has also posted offensive documents in common areas of the condominium building, including on the condominium association board's bulletin board.

Downing, who is Jewish, complained to the condominium association board about Mentink's offensive material and eventually reported the matter to the police. She and other residents also removed the offensive material from the common areas of the building.

Thereafter, Mentink began to act as if he was about to spit when he encountered Downing in the building's parking garage, or when he observed her outside her

2

condominium on her balcony. Mentink also spat on Downing's vehicle four times in March 2012. Downing felt threatened by Mentink's acts, and she verbally confronted him on one occasion in the parking garage. In response, Mentink took a baseball bat out of his car and shook it at Downing.

On June 1, 2012, Downing filed a petition for a protection order against Mentink. The trial court issued an ex parte order for protection that same day. Mentink then requested a hearing, which was held on June 28, 2012. After both parties testified, the trial court concluded that the protection order would remain in effect. Mentink now appeals. Additional facts will be provided as necessary.

**Standard of Review**

Initially, we note that Downing did not file an appellee's brief. Accordingly, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Prima facie means "'at first sight, on first appearance, or on the face of it.'" Id. (quoting Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1160 (Ind. Ct. App. 2003)). However, this rule is not intended to benefit the appellant, but rather to relieve this court of the burden of developing arguments on the appellee's behalf. State v. Moriarty, 832 N.E.2d 555, 558 (Ind. Ct. App. 2005). The burden of demonstrating trial error remains with the appellant. State v. Combs, 921 N.E.2d 846, 850 (Ind. Ct. App. 2010).

When we review the sufficiency of the evidence to support the issuance of a protection order, we apply the same standard of review as we apply to other civil cases. See Tons v. Bley, 815 N.E.2d 509, 511 (Ind. Ct. App. 2004). We neither reweigh the

3

evidence nor resolve questions of credibility, and we look only to evidence supporting the trial court's judgment, together with the reasonable inferences to be drawn therefrom. Id.

**Discussion and Decision**

The Civil Protection Order Act "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Ind. Code § 34-26-5-1; Aiken v. Stanley, 816 N.E.2d 427, 430 (Ind. Ct. App. 2004). Generally, a trial court has discretion to grant protective relief according to the terms of the Act. See Ind. Code § 34-26-5-9. However, a finding by the trial court that domestic or family violence has occurred sufficient to justify the issuance of an order for protection means that the respondent represents a credible threat to the safety of the petitioner. Ind. Code § 34-26-5-9(f). Therefore, upon a showing of domestic or family violence by a preponderance of the evidence, the trial court "shall grant relief necessary to bring about a cessation of the violence or the threat of violence." Id.

Indiana Code section 34-26-5-2(a) provides that "[a] person who is or has been a victim of domestic or family violence may file a petition for an order of protection against a: . . .(2) person who has committed stalking under IC 35-45-10-5 or a sex offense under IC 35-42-4 against the petitioner." "Domestic and family violence" includes stalking. Essany v. Bower, 790 N.E.2d 148, 154 (Ind. Ct. App. 2003). And "[t]here is no requirement that the alleged stalking be committed by a family or household member," as those terms are defined by Indiana Code section 34-6-2-44.8. Id. (citation omitted). "Therefore, a person who alleges that she is a victim of stalking, even where the alleged

4

stalker is a stranger to the victim, may seek a protection order against the alleged stalker under Indiana Code section 34-26-5-2(a)(2)." Id.

Mentink argues that the trial court's finding that Downing established "by a preponderance of the evidence that stalking had occurred sufficient to justify the issuance of" the protection order is not supported by sufficient evidence. See Appellant's App. p. 4. Indiana statute defines stalking as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35-45-10-1. "Harassment" in turn is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." Ind. Code § 35-45-10-2.

The trial court granted Downing's petition for an ex parte protection order in which Downing alleged 1) that Mentink acts like he is going to spit on Downing when he sees her on her balcony or in the parking garage, 2) that Mentink spat on Downing's car, 3) that on one occasion when Downing confronted Mentink after he acted like he was going to spit on her, Mentink took a baseball bat out of his vehicle and "shook it at" Downing, and 4) that Mentink "consistently placed hate materials in parking garage and in public areas." Appellant's App. p. 10.

After the protection order was served on Mentink, he requested a hearing. Downing testified that she felt threatened by Mentink because of the anti-Semitic

5

materials he posted in his car windshield and in the common areas of the condominium building. She stated that Mentink began acting like he was going to spit on her after she complained to the condominium association board and the police about Mentink's posting of the offensive materials.

Downing testified that he spat on her automobile four times in March 2012. Tr. p. 23. She also stated that he acts like he is going to spit on her by making spitting sounds when he sees her outside on her balcony or inside the parking garage. She then stated, "this has just been going on and on and on. And . . . it's to the point where it's been every day." Downing stated that she is afraid of Mentink and afraid to go into the parking garage. Downing also testified that she confronted Mentink on one occasion in the parking garage because she "was tired of being afraid of him" and wanted to feel safe in her own home. Tr. pp. 25-26. Mentink then took a baseball bat out of his vehicle and shook it at Downing.

Mentink denied most of Downing's claims. He also testified that Downing confronted him on numerous occasions and screamed obscenities at him. He stated that he has sinus problems and spits occasionally, but never spat on Downing's vehicle or acted as if he was going to spit on her. Finally, he stated that on one occasion when Downing confronted him, "she had her hand down to one side" and he did not "know if she was hiding a knife or a gun or something sharp." Tr. p. 8. Therefore, he took his baseball bat out of his vehicle.

Mentink cites his own testimony in support of his claim that he did not stalk Downing. But we must respect the fact-finder's "exclusive province to weigh conflicting

6

evidence," and Mentink's claim is simply a request to reweigh the evidence, which we will not do. See Joslyn v. State, 942 N.E.2d 809, 811 (Ind. 2011); see also Tons, 815 N.E.2d at 511. The trial court clearly discredited Mentink's denials and concluded that Downing's evidence was sufficient to establish that Downing reasonably felt threatened by Mentink, and that Mentink was harassing her. Tr. pp. 45-46. We agree. Mentink repeatedly acted as if he was going to spit on Downing, and he spat on her automobile four times. Downing also felt threatened, and reasonably so, when Mentink shook his baseball bat at her. When considered in aggregate and in context, Mentick's acts reasonably caused Downing to feel frightened and threatened, particularly where Mentink began harassing Downing after she attempted to remove Mentink's anti-Semitic and racist literature from the condominium building common areas.

Downing claims the issuance of the protection order violates his First Amendment right of free speech. By its boilerplate terms under the Civil Protection Order Act, the protection order enjoins Mentink "from threatening to commit or committing acts of stalking against" Downing, prohibits him from "harassing, annoying, telephoning, contacting or directly or indirectly communicating with" Downing, and orders Mentink to "stay away from" Downing's residence, school, and/or place of employment. Appellant's App. pp. 4-5. Mentink's threatened and actual spitting behavior and threatening conduct are not protected speech. However, we hold that to conform with the freedoms protected by the First Amendment, as offensive as a reasonable person might

find the material posted in his vehicle and on his vehicle by way of bumper stickers, Mentink remains free to express himself in that manner.[1]

For all of these reasons, we affirm the trial court's judgment but remand this case to the trial court with instructions to amend the protection order to clarify that Mentink's expression of his First Amendment rights does not constitute harassment.

Affirmed.

KIRSCH, J., and CRONE, J., concur.

---

[1] "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989). But the protections afforded by the First Amendment are not absolute. See e.g. Chaplinksy v. New Hampshire, 315 U.S. 568, 571-72 (1942). Threats of violence, or "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual" are not protected by the First Amendment. Virginia v. Black, 538 U.S. 343, 359 (2003); see also Madsen v. Women's Health Center, Inc., 512 U.S. 753, 774 (1994).

We further note that Indiana has no statutory provisions governing what might reasonably be determined to be hateful conduct or publications. Since Mentink's conduct does not rise to the level of a crime, his conduct does not need to be reported pursuant to Indiana Code section 10-13-3-38.