

FILED

Jun 14 2019, 9:32 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

William A. McCarthy
Amy Freeland
Indiana Legal Services, Inc.
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE

Kerry Hyatt Bennett
Indiana Coalition Against Domestic Violence
Indianapolis, Indiana

Matthew T. Albaugh
Faegre Baker Daniels LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| N.E.,<br>*Appellant-Petitioner,*<br><br>v.<br><br>L.W.,<br>*Appellee-Respondent.* | June 14, 2019<br><br>Court of Appeals Case No.<br>18A-PO-2514<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Christina R. Klineman, Judge<br><br>Trial Court Cause No.<br>49G17-1808-PO-32889 |

**Robb, Judge.**

# Case Summary and Issue

[1] Following four instances of alleged domestic violence, N.E. ("Wife") sought a protection order against L.W. ("Husband"). The trial court denied Wife's request without holding an evidentiary hearing, finding that a protection order was not necessary because Husband was subject to a criminal no-contact order as to Wife. Wife now appeals, raising two issues for our review: (1) whether the trial court failed to provide Wife with an adequate hearing on her petition for a protection order; and (2) whether the trial court erred in denying Wife's petition on grounds that a no-contact order was in place. Concluding that the hearing, in which the trial court did not allow Wife to testify or present evidence, was inadequate under the Indiana Civil Protection Order Act ("CPOA") and that the trial court erred in denying Wife's protection order petition on grounds that a no-contact order was in place, we reverse and remand for further proceedings.

# Facts and Procedural History

[2] On August 21, 2018, Wife filed a petition for a protection order and request for a hearing, alleging that Husband committed several acts of physical and verbal abuse against her. Specifically, Wife alleged that on December 20, 2017, Husband came home and began to argue with her. To end the argument, Wife walked out of the home and went to her car to make a phone call. However, Husband followed her, walked up to her car, opened the door and began pulling her out of the car by her arm, and eventually grabbed Wife by the neck. Wife

was able to free herself from Husband by kicking him in the knee and knocking him down, but she was left with a bruised arm from Husband's grip. Wife reported the incident to the police, and Husband was eventually arrested. Husband entered into a plea agreement and was convicted of Class C misdemeanor battery as a result of the incident.

[3] The second incident occurred on June 8, 2018, when Husband returned home after consuming alcohol. He began calling Wife names, and Wife told him that she wanted a divorce and then asked Husband to leave the home. Husband "knocked over furniture, knocked [Wife] around the living room, threw [her] around on the floor, and grabbed [her] around [her neck], which left bruises on [her] arms, legs, and neck. Husband pulled [Wife's] wedding ring off of [her] finger, which injured [Wife's] finger." Appellant's Appendix, Volume 2 at 10. Wife fled her home and traveled "to Ohio for three days . . . to get away from [Husband]." *Id.* at 10. Husband was arrested again after the incident, but Wife did not seek criminal charges because Husband promised to leave her home.

[4] The third incident occurred one month later, on July 8, 2018. On that day, Wife's two grandchildren were eating at her dining room table when Husband entered the room and yelled at the thirteen-year-old granddaughter because he thought the child had disrespected him. The granddaughter began to cry. Husband then began "walking around the house, yelling, and slamming doors" as well as "mak[ing] intimidating movements and getting into [the granddaughter]'s personal space." *Id.* at 9. The twelve-year-old grandson called the police. When the police arrived, they escorted Husband from Wife's

home. Wife attempted to take away Husband's key to her home, but one of the officers ordered her to return it.

[5] As for the fourth incident that occurred on August 16, 2018, Husband became upset because a cooking pan that he wanted to use had not been washed. He began to slam dishes into the sink and yell at Wife. Husband repeatedly yelled at Wife while holding a butcher knife. Soon thereafter, Husband placed his hands on Wife's neck. Husband "stopped himself from escalating, but did not stop yelling" at Wife. *Id.* Wife eventually fled the home and sought help from the police to remove Husband from the home. While she did so, Husband continued to call her and left her a voicemail message in which he called her "derogatory names." *Id.* Wife suffered "anxiety symptoms and a panic attack" as a result of the incident. *Id.*

[6] In her August 21, 2018 petition for a protection order, Wife asked the trial court to prohibit Husband from contacting Wife or committing further acts of violence against her; to evict Husband from Wife's home; and to grant Wife possession and use of her home, vehicles, her personal property, and her dog. Wife also requested that Husband be ordered to compensate her for damages resulting from his acts of violence, including attorney fees, counseling, and property damage, and that Husband be prohibited from possessing firearms and ordered to surrender a black revolver to law enforcement.

[7] On August 22, the day after Wife filed her petition, the trial court issued a form order titled Ex Parte Order for Protection. The order was a preprinted form

with spaces to apply checkmarks for applicable provisions. In the order, the trial court indicated that a hearing date for the matter was set for September 18, 2018. However, the trial court did not mark either of the spaces on the form to indicate whether Wife's petition was granted or denied ex parte. In the comment space on the form, the trial court handwrote the following: "[Wife] is encouraged to seek counsel [regarding] divorce and separation of assets." *Id.* at 20. Also, on August 22, the trial court issued a Notice to Appear, directing Wife and Husband to appear at the September 18 hearing.

[8] Wife appeared pro se at the hearing, but Husband did not. The matter was called by the trial court, however, Wife was not administered the oath and no testimony or evidence was offered. Instead, the trial court asked Wife if she still sought an order for protection. Wife replied in the affirmative and added that she had been advised by the prosecutor's office that a no-contact order had been issued under a criminal matter involving Husband. The trial court then explained as follows regarding why Wife did not need a protection order:

> Right. So, it looks like [Husband] does have a pending case in Criminal Court Five (5). He has been arrested on it, and . . . let me see who is on the [no-contact] order. If you're on the [no-contact] order, I probably wouldn't do anything with this and you'd just have the criminal case. Yeah. You are on the [no-contact] order. So, there's already a [no-contact] order in place. Uhm, so, you really don't need a protective order. The [no-contact] order will give you more protections than this does.

Transcript of the Record at 4.[1]  The trial court told Wife that she could seek an order for protection at a later time if Husband's criminal case did not result in a conviction.

[9]  Also, at the hearing, Wife renewed her request that Husband be evicted from her home.  The trial court stated that Husband would need to be present before it could order an eviction and informed her that an eviction was not necessary because Husband was in custody at the time and would be barred from the residence by the no-contact order.  The trial court suggested that Wife "box[] up" Husband's belongings and "give it to a family member of his and just be done with it.  Then change the locks." *Id.* at 5.  The trial court concluded the hearing by stating:  "All right, so, you're free to go.  You have the [no-contact] order.  If [Husband] comes by, contact the police and tell them that there is a [no-contact] order by virtue of a criminal case and they will– they can arrest him.  Okay?" *Id.*

[10]  After the hearing, the trial court issued its written Order Denying Petition for an Order for Protection.   In the order, the trial court found that Wife "has not shown, by a preponderance of the evidence, that domestic or family violence, stalking or a sex offense has occurred sufficient to justify the issuance of an Order for Protection."  Appellant's App. at 6.  However, the trial court also

[1] The no-contact order was not presented as an exhibit at the hearing, so it is unclear from the record the circumstances under which the no-contact order was issued.

issued a minute sheet, indicating that it declined to grant an order for protection because a criminal no-contact order was in place at the time the petition was filed, specifically, "Court did not issue EPO because NCO is in place in [Husband's criminal case]."[2] *Id.* at 3. Wife now appeals.

# Discussion and Decision

## I. Standard of Review

Initially, we note that Husband did not file an appellee's brief. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Id.* "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (citation and quotation marks omitted).

## II. Adequacy of Hearing

Wife first asserts that she was denied a fair hearing on her petition for a protection order because the trial court did not allow her to testify about the allegations of her petition, present evidence, and call witnesses. The Indiana Coalition Against Domestic Violence and Battered Women's Justice Project have filed a joint amicus brief in support of Wife's position, in which the amici

---

[2] This information is taken from the chronological case summary.

discuss the history of the CPOA, our General Assembly's intent regarding its enactment, and the importance of the right of survivors of intimate partner violence to seek protection through the court system and to not be dissuaded from doing so. The amici maintain that a "fair and full hearing on the merits of a petition for a protective order is required by Indiana law" and that it is "vitally important that [courts] correctly state and apply the law . . . and give survivors [of intimate partner violence] a full and fair hearing on the merits." Brief of *Amici Curiae* Indiana Coalition Against Violence and Battered Women's Justice Project at 6. The amici emphasize that "[s]urvivors of intimate partner violence have the right to tell their story when seeking the court's protection, and Indiana courts must fully consider survivors' requests for relief." *Id.* They assert that survivors "must be able to rely on Indiana courts for the justice available to them under Indiana law." *Id.*

[13] The Indiana Legislature has indicated that the CPOA "shall be construed to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Ind. Code § 34-26-5-1. Indiana Code section 34-26-5-2(a)(1) provides that "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member who commits an act of domestic or family violence[.]" "Domestic or family violence" means, in relevant part, "[a]ttempting to cause, threatening to cause, or causing physical harm to

another family or household member" or "[p]lacing a family or household member in fear of physical harm." Ind. Code § 34-6-2-34.5(1), (2).

[14] Generally, a trial court has discretion to grant protective relief according to the terms of the CPOA. *See* Ind. Code § 34-26-5-9. Under Indiana Code section 34-26-5-9(a)(2), a trial court may "*upon notice and after a hearing,* whether or not a respondent appears, issue or modify an order for protection." (Emphasis added). In *Essany v. Bower*, 790 N.E.2d 148, 152 (Ind. Ct. App. 2003), we held that the minimum requirements for a hearing under the CPOA include the opportunity to testify, as well as call and cross-examine witnesses. A trial court errs if it issues a protection order absent these safeguards. *See id.* at 153.

[15] Here, the trial court summarily denied Wife's petition for a protection order without affording her the opportunity to testify, present evidence, and call witnesses. Instead of holding an evidentiary hearing, the trial court instructed Wife that she was "free to go[;]" that because a no-contact order was in place, if Husband attempted to return to the house, Wife could "contact the police and tell them that there is a [no-contact] order by virtue of a criminal case and they will– they can arrest him[;]" and that Wife could seek an order for protection at a later time if Husband's criminal case did not result in a conviction. Tr. at 5. In light of our holding in *Essany,* we conclude that the September 18 hearing did not meet the minimum requirements of Indiana Code section 34-26-5-9 and that the trial court erred when it did not allow Wife to testify, present evidence, and call witnesses before denying her petition. We, therefore, reverse and remand to the trial court for a new hearing.

# III. Denial of Wife's Petition

Wife next contends that the trial court erred by denying her request for a protection order. Wife specifically argues that the trial court erred in (1) determining that she failed to prove, by a preponderance of the evidence, that domestic violence occurred; and (2) there was no need to issue a protection order because a no-contact order was in place. We address these arguments because they are likely to recur on remand.

## A. Standard of Review

The CPOA provides that a protection order may be issued when a trial court finds, by a preponderance of the evidence, that the respondent represents a credible threat to the safety of the petitioner or a member of the petitioner's household – that is, that domestic or family violence has occurred. *See Maurer v. Cobb-Maurer*, 994 N.E.2d 753, 756 (Ind. Ct. App. 2013) (citing Ind. Code § 34-26-5-9(f)). In reviewing the sufficiency of the evidence to support the trial court's judgment regarding a protection order, we neither reweigh the evidence nor resolve questions of credibility. *See Tons v. Bley*, 815 N.E.2d 508, 511 (Ind. Ct. App. 2004). We consider only the probative evidence and reasonable inferences that support the trial court's judgment. *Maurer*, 994 N.E.2d at 755. We will reverse the trial court's judgment regarding a protective order only if it is clearly erroneous, that is to say, when a review of the record leaves us firmly convinced that a mistake has been made. *See Mysliwy v. Mysliwy*, 953 N.E.2d 1072, 1076 (Ind. Ct. App. 2011), *trans. denied*.

## B. Whether Domestic Violence Occurred

[18] Here, the trial court summarily denied Wife's petition, concluding in a written order that she had not met her burden of proving, by a preponderance of the evidence, that domestic violence had occurred. Because we have determined that Wife's hearing was inadequate, and remand for a new hearing, we decline to make a determination regarding whether Wife met her burden of proving the allegations in her petition by a preponderance of the evidence. To quote *Essany*, Wife "will now have an opportunity to present evidence in a hearing before the trial court." 790 N.E.2d at 154.

## C. No-Contact Order

[19] The trial court also indicated in a minute sheet that it was declining to issue the protection order because Husband was subject to a no-contact order as to Wife. Wife maintains that the trial court erred in making this determination. The amici argue that the trial court's denial of Wife's petition was "wrongly based on the existence of a pending criminal court order and not on the merits of [Wife's] allegations." Br. of *Amici Curiae* at 11. We agree.

[20] Indiana Code section 34-26-5-6 allows a party to seek a protection order at any time. The fact that Husband was subject to a no-contact order as to Wife, in a criminal proceeding, did not prohibit Wife from seeking a protection order. *See* Ind. Code § 34-26-5-6(1) ("An order for protection is in addition to, and not instead of, another available civil or criminal proceeding."); *see also* Ind. Code § 34-26-5-6(2) ("A petitioner is not barred from seeking an order because of

another pending proceeding."). To the extent that the trial court based its denial of Wife's petition on the existence of a no-contact order, the trial court erred.

[21] Furthermore, we remind the trial court that a protection order and a criminal no-contact order are not interchangeable, and that a criminal no-contact order cannot provide Wife all the relief that a protection order can. Criminal no-contact orders can be imposed as a condition of a defendant's pre-trial release, an executed sentence, or probation, and such orders direct that the defendant refrain from "any direct or indirect contact with an individual." *See* Ind. Code §§ 35-33-8-3.2(a)(4), 35-38-1-30, and 35-38-2-2.3(a)(18) (2017), respectively. A protection order, under the CPOA, is broader and can be issued immediately, without notice or hearing, and additional relief (such as attorney fees and reimbursement for certain expenses related to the domestic violence) can be afforded a petitioner after notice and a hearing. *See* Ind. Code § 34-26-5-9. As provided by the amici:

> For survivors who are either not interested in, or fearful of, reporting acts of abuse to law enforcement, a [civil protection order] provides a remedy, which includes features that the criminal justice system does not afford. The [civil protection order] system provides the promise of a lower standard of proof, . . . an expansive definition of abuse, ancillary relief, . . . and vests the survivor with legal decision-making authority. These special features are consistent with survivor safety, promoting the health and welfare of battered persons and their children, and responding to the complexities of intimate partner violence[.]

Br. of *Amici Curiae* at 12-13 (quoting Dana Harrington Conner, *Civil Protection Order Duration: Proof, Procedural Issues, and Policy Considerations*, 24 TEMP. POL. & CIV. RTS. L. REV. 343 (2015) (footnotes omitted)).

## D. Eviction of Husband and Other Relief

[22] Finally, Wife argues that the trial court's determination that Husband would have to be present before it could grant Wife's request that Husband be evicted from her home is "simply incorrect." Brief of Appellant at 20. We agree.[3]

[23] Nothing in the CPOA suggests that a respondent must be present before the trial court can order eviction. To the contrary, Indiana Code section 34-26-5-9(a) provides that a trial court may grant ex parte protective relief immediately and without notice or hearing, or the court may issue an order for protection upon notice and after a hearing has been held. Subsection (b) lists the relief the trial court can grant in an ex parte order for protection, including "[removing] and exclud[ing] a respondent from the residence of a petitioner, regardless of ownership of the residence" without notice and hearing. Ind. Code § 34-26-5-9(b)(3).

[24] We also note that Wife sought additional relief in her petition for a protection order, that is, that the trial court order Husband to pay her attorney's fees and

---

[3] The amici "seek a ruling from this Court reinforcing that while always discretionary, consideration of temporary ancillary relief requested in protection order cases[, such as a request for eviction,] is consistent with [CPOA]'s black letter and spirit." Br. of *Amici Curiae* at 15. We decline the amici's request.

reimburse her for expenses related to his acts of violence – namely, counseling and property damage fees. She also asked that Husband be prohibited from possessing firearms and ordered to surrender his revolver to law enforcement.

[25] Indiana Code section 34-26-5-9(c) governs the relief a trial court may grant in an order for protection *after* notice and a hearing (whether or not a respondent appears), and the statute specifically provides that the trial court may grant the particular relief that Wife seeks.[4] Because Wife seeks relief that the trial court has the authority to grant, on remand, we further instruct the trial court to determine whether Wife is entitled to the additional relief she seeks.

# Conclusion

[26] Based on the foregoing, we conclude that: (1) Wife's hearing on her petition for a protection order was inadequate under the CPOA; and (2) the trial court erred in denying Wife's petition on grounds that a no-contact order was in place. For

---

[4] Indiana Code sections 34-26-5-9(c)(3) and (4) provide for the following relief (relevant to the case before us):

>  (3) Order a respondent to:
>
> > (A) pay attorney's fees; . . . ;
> >
> > (D) reimburse a petitioner or other person for expenses related to the domestic or family violence, including: . . .
> >
> > > (ii) counseling; . . . and
> > >
> > > (iv) repair or replacement of damaged property; . . . .
>
>  (4) Prohibit a respondent from using or possessing a firearm, ammunition, or a deadly weapon specified by the court, and direct the respondent to surrender to a specified law enforcement agency the firearm, ammunition, or deadly weapon for the duration of the order for protection unless another date is ordered by the court.

*See also* Ind. Code § 34-26-5-9(f) (additional provision governing the surrender of firearms).

the reasons stated above, we reverse and remand with instructions to the trial court to conduct a new hearing on Wife's petition for a protection order against Husband, determine whether Wife has proven the allegations in her petition by a preponderance of the evidence, and grant her all appropriate relief.

Reversed and remanded.

Baker, J., and Najam, J., concur.